UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| NEPAMUCENO GALVAN, | ) | Civil Action No. _____ |
|  | ) |  |
|  | ) | **COMPLAINT** |
|  | ) | **JURY TRIAL DEMANDED** |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| ROLLING LAWNS, INC., DAVID FERRARO and | ) |  |
| EVAN FERRARO, | ) |  |
|  | ) |  |
| Defendants. | ) |  |

_____

Plaintiff Nepamuceno Galvan (hereinafter referred to as "Mr. Galvan" or "Plaintiff") by and through his attorneys, Kalmanson Cohen, PLLC, as and for his Complaint against Defendants, hereby alleges the following upon personal knowledge as to his own acts, and upon information and belief as to all other matters, as follows:

## <u>NATURE OF THE CLAIMS</u>

1.      This is an employment action arising out of Defendants' wrongful termination of Plaintiff's employment and multiple egregious violations of wage and hour laws.

2.      After dedicating more than thirty (30) years of hard work and sacrifice to his employer, and with stellar performance reviews, Plaintiff was unlawfully discriminated against and terminated by Defendants on account of his age and disability.

3.      Plaintiff brings this action to recover damages arising out of (a) Defendants' failure to pay him wages, overtime wages and worker's compensation benefits in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.* and the New York Labor Law ("NYLL"), §650 *et seq.*; (b) Defendants' recordkeeping violations under the FLSA and failure to

furnish wage statements in violation of the NYLL; and (c) Defendants' age and disability-based discrimination perpetrated against Plaintiff under the New York State Executive Law §§ 296 *et seq.* ("NYSHRL").

4.      Plaintiff seeks injunctive and declaratory relief, compensatory, liquidated and punitive damages, attorneys' fees, costs and other appropriate legal and equitable relief pursuant to and in accordance with the FLSA, the NYLL and the NYSHRL.

## JURISDICTION and VENUE

5.      Jurisdiction is conferred upon the Court by 42 U.S.C. §2000e-5(f)(3) and under 28 U.S.C. §§1331, 1337 and 1343(4) because this action involves federal questions regarding the deprivation of Plaintiff's rights under the FLSA.

6.      The Court has supplemental jurisdiction over Plaintiff's claims brought under the NYSHRL pursuant to 28 U.S.C. §1367(a).

7.      Pursuant to 28 U.S.C. §1391 and 42 U.S.C. §2000e-5(f)(3), venue is proper in this district because a substantial part of the events or omissions giving rise to this action occurred in this district and Defendants regularly do business within the Southern District of New York.

## PARTIES

8.      Mr. Galvan, a fifty-nine (59) year-old man, is a Hispanic individual who resides in New Rochelle, New York.

9.      Upon information and belief, Defendant David Ferraro ("D. Ferraro") is a Caucasian individual residing in Purchase, New York.

10.     D. Ferraro is and was, at all relevant times, the President of Rolling Lawns Inc. ("Rolling Lawns" or the "Company").

11.     In his role as President, D. Ferraro determined Rolling Lawns' policies and practices, including, but not limited to, the terms and conditions of employment, making hiring and firing decisions as well as compensation decisions.

12.     D. Ferraro was and remains an "employer" within the meaning of all applicable statutes.

13.     Upon information and belief, Defendant Evan Ferraro ("E. Ferraro") is a Caucasian individual residing in Purchase, New York.

14.     E. Ferraro is and was, from 2019 through the present, the Operations Manager of Rolling Lawns and the son of President, Defendant D. Ferraro.

15.     E. Ferraro controls the operations of the Company and assists in implementing and exercising the policies and practices of Rolling Lawns including, but not limited to, how employees are compensated, hired and terminated.

16.     E. Ferraro was and remains an "employer" within the meaning of all applicable statutes.

17.     Upon information and belief, Defendant Rolling Lawns is a New York Corporation with its principal place of business at 509 Fayette Avenue, Mamaroneck, NY 10543.

18.      Defendants have, directly or indirectly, made use of instrumentalities, including motor vehicles, goods and mails, of interstate commerce with the transactions, acts, practices and courses of business alleged in this Complaint.

19.     At all relevant times, Rolling Lawns was an "employer" within the meaning of all applicable statutes, and an enterprise engaged in commerce as defined by §203(r) and (s) of the FLSA, with annual gross volume business done in an amount no less than $500,000.

## FACTUAL ALLEGATIONS

20.     Rolling Lawns is a family-owned business in operation since 1955.

21.     The Company provides high-end landscaping services to residential and commercial clients in Westchester, NY and Fairfield, CT.

22.     Rolling Lawns touts itself as providing "Luxurious Landscapes, Meticulous Care."

23.     According to the Rolling Lawns website, "Our commitment is to beautify homes, their landscapes, their properties and the lifestyles of the families who view them as their personal sanctuaries."

24.     Rolling Lawns hired Mr. Galvan as a Laborer in or around 1991.

25.     At that time, Mr. Galvan's duties included mowing lawns, planting gardens, lawn maintenance and minor construction work.

26.     During the relevant time period, Defendants employed multiple Laborers.

27.     Upon information and belief, Defendants typically employ between ten (10) and fifteen (15) Laborers at a time.

28.     Upon information and belief, Rolling Lawns employed many of Plaintiff's colleagues, throughout the years, without proper work authorization to be employed in the United States.

29.     At no time during Plaintiff's employment did Rolling Lawns provide Mr. Galvan with a New York State Wage Theft Form.

30.     Upon information and belief, Rolling Lawns never provided any of its employees with a New York State Wage Theft Form.

31.     At the time of Plaintiff's hire, the Company compensated Mr. Galvan with a salary of approximately $30,000 per year.

4

32.     From in or around 2007 through 2023, the Company paid a portion of Mr. Galvan's wages via check and another portion of his wages in cash and "under the table."

33.     Upon information and belief, Defendants paid other employees' wages in cash and "under the table" as well.

34.     Upon information and belief, Defendants did not keep a record of the cash payments and did not record those payments to the Internal Revenue Service ("IRS") or the New York State Department of Labor ("NYSDOL").

35.     Starting in 1991, at the direction of D. Ferraro, Mr. Galvan regularly worked sixty (60) hours per week for Rolling Lawns.

36.     Plaintiff worked from approximately 7:15 a.m. to 5:30 p.m. six (6) days per week, Monday through Saturday, with a thirty (30) minute lunch break each day.

37.     Defendants did not employ a timekeeping system until 2019, wherein employees were required to punch-in using a punch clock at the beginning of the day and punch-out at the end of the day.

38.     However, despite the fact that Plaintiff always worked approximately sixty (60) hours per week, Plaintiff's pay stubs incorrectly reported that Plaintiff worked only forty (40) hours per week.

39.     The Company compensated Mr. Galvan at the same rate of pay regardless of how many hours he worked per week.

40.     At no time did Defendants pay Mr. Galvan at an overtime rate of pay.

41.     D. Ferraro consistently provided Mr. Galvan with positive feedback and positive performance reviews.

42.     In or around 1998, Plaintiff received a job offer from a construction company; however, D. Ferraro encouraged and induced Plaintiff to stay at Rolling Lawns, promising Plaintiff that Rolling Lawns would "take care of him" and that he, D. Ferraro, would continue to make Mr. Galvan an integral part of the Company.

43.     As a result of this conversation and in recognition of his excellent work, D. Ferraro promoted Mr. Galvan to Foreman.

44.     When Mr. Galvan was promoted, he also received a pay increase of $20,000 per year, to approximately $50,000 per year.

45.     Then, in or around 2011, Rolling Lawns, at the direction of D. Ferraro, gave Mr. Galvan another pay increase.  This time, Rolling Lawns raised Mr. Galvan's salary by another $48,000, to around $98,000 per year.

46. From 1998 through 2019, Mr. Galvan, as Foreman, was involved in all facets of the Rolling Lawns business, including architectural design, inventory work, supervision of staff, maintenance of company vehicles and operational oversight of landscaping projects.

47.     But then, in or around 2019, after thirty (30) years of Mr. Galvan's dedicated service, D. Ferraro cloaked his son, E. Ferraro with significantly more authority within the Company.

48.     At that time, E. Ferraro, a twenty-two (22) year-old with no management experience, was given a larger role within the Company and became a full-time executive.

49.     Nearly immediately, Defendant E. Ferraro made significant changes at Rolling Lawns, including changes to the employee roster and treatment of employees.

50.     Specifically, E. Ferraro sought to deploy a younger workforce, favoring and hiring younger workers, and pushing out and demoting the older—long dedicated—team members, like Mr. Galvan.

51.     Defendants generally hired Laborers who were between the ages of twenty (20) and thirty-five (35) years old.

52.     Upon information and belief, during E. Ferraro's tenure, from 2019 to the present, there have only been two or three other employees who were over the age of forty (40).

53.     In or around 2019, despite having no performance deficiencies, Defendants stripped Mr. Galvan of *all* of the Foreman responsibilities that he had worked so hard to earn over more than twenty (20) years.

54.     Shockingly, after decades of service, dedication, positive performance feedback and promotion, Defendants demoted Mr. Galvan back to performing the job of a Laborer.

55.     Still, Plaintiff remained committed and devoted to Defendants.

56.     Defendants continued to require Mr. Galvan to work ten (10) hours a day, six (6) days per week, for a total of sixty (60) hours per week.

57.     Plaintiff worked from approximately 7:15 a.m. to 5:30 p.m., six (6) days per week, Monday through Saturday, with a thirty (30) minute lunch break each day.

58.     But worse, despite Defendants having returned Mr. Galvan to a low-level manual worker, they once again failed to properly compensate Mr. Galvan for hours that he worked in excess of forty (40) per week.

59.     At no time did Defendants pay Plaintiff overtime, or any excess compensation, for hours worked in excess of ten (10) hours per day or in excess of forty (40) hours per week, or pay him at an overtime rate of pay.

60.     Additionally, Defendants reduced the amount of recorded wages for Plaintiff.

61.     For example, in 2019, Plaintiff's pay stubs totaled $97,879.19, while in 2022, Plaintiff's paystubs totaled $61,240.

62.     Defendants supplemented Plaintiff's wages with "under the table" cash, but, upon information and belief, did not report those wages to the IRS or the NYSDOL, in violation of the FLSA.

63.     Upon information and belief, Defendants made willful misrepresentations to the IRS and NYSDOL as a result of the illegal cash payments.

64.     In or around 2022, Defendants E. and D. Ferraro began making explicit jokes about Plaintiff's mature age.

65.     Plaintiff endured jokes that he should be "put out to pasture in the river", was greeted as "old man" and referred to as "papi".

66.     In or around 2022, Defendants removed Plaintiff's desk from the main garage and began systematically excluding him from meetings and assignments of which Plaintiff had previously been a part.

67.     In or around January 2023, Plaintiff suffered a workplace injury in the presence of D. Ferraro.

68.     Specifically, Mr. Galvan accidentally fell off of a ladder in the Defendants' garage and suffered two (2) broken bones in his foot.

69.     Despite having witnessed the accident, Defendant D. Ferraro instructed Plaintiff to report to his physician and his insurance "that it was an accident that happened at home."

70.     Out of fear for his job, Mr. Galvan did as he was told.

71.     As a result, Defendants denied Mr. Galvan the ability to collect workers compensation insurance for his accident.

72.     At no time did Defendants provide Plaintiff with information about his rights under Worker's Compensation Insurance, New York State Disability, the Americans with Disabilities Act, the Family Medical Leave Act, or any other applicable law or regulation governing the treatment of employees who become injured at work or otherwise.

73.     Despite Plaintiff's severe injuries, Defendants required Plaintiff to return to work just a few weeks later, before his foot had time to properly heal.

74.     Defendants forced Mr. Galvan to return to work in February 2023; he then suffered the physical consequences of working a manual labor job on an injured foot.

75.     Defendants made no effort to offer Plaintiff an accommodation or additional time off from work so that his foot could properly heal.

76.     In fact, Defendants overburdened Plaintiff while he was in a weakened, injured state: they forced him to push heavier carts, climb on top of trucks and work faster than normal.

77.     Following Plaintiff's return to work after his injury, Defendants treated Plaintiff particularly harshly, calling him an idiot, and requiring him to perform riskier and more dangerous tasks than had previously been requested of him.

78.     Upon information and belief, Defendants were hoping that Plaintiff would resign because they no longer wanted to employ Plaintiff, due to his age and disability.

79.     In or around February 2023, Defendants refused to listen to any of Plaintiff's suggestions, and specifically told Mr. Galvan that the "crews were no longer going to listen to him. They [would] only listen to David, Carmen and Evan."

80.     Just two months after his fall, in late March 2023, D. Ferraro unceremoniously terminated Mr. Galvan in a patent and unapologetic act of age and disability discrimination.

81.     Specifically, D. Ferraro informed Plaintiff that he was being terminated because, in Defendant David Ferraro's words, "although there is nothing wrong with your performance, we are getting older and we need new blood in the Company."

82.     After a thirty-year (30) commitment to Defendants, Plaintiff was shocked to have been terminated.

83.     Upon and information, Plaintiff was replaced by a younger employee.

84.     Upon information and belief, Defendants illegally discriminated against Plaintiff as a result of his age and an on-the-job injury by demoting him and terminating his employment.

85.     Moreover, for over thirty (30) years, from approximately 1991 to 2023, Defendants forced Plaintiff to work ten (10) hours a day, Monday through Saturday, working approximately sixty (60) hours per week without any overtime pay.

86.     As a result of the Company's discriminatory conduct, Plaintiff lost his income as a mature individual, while in a compromised medical state.

87.     Since his termination, Plaintiff has been suffering from significant emotional distress; he is stricken with severe anxiety and depression, causing stomach distress, loss of appetite, inability to sleep, and intense feelings of shame and insecurity.

### FIRST CLAIM FOR RELIEF
(Failure to Pay Overtime Wages in Violation of 29 U.S.C. §207)

88.     Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

89.     FLSA requires covered employers, like Defendants, to pay all non-exempt employees at a rate of not less than one and one-half times their regular rate of pay for all hours

worked in excess of forty (40) hours per workweek.  From 2019 through 2023, Plaintiff was a non-exempt employee and was eligible for overtime under the FLSA.

90.     Plaintiff has been subject to the unlawful policies, plans and practices of Defendants, including failing to pay overtime at a rate of one and one-half times Plaintiff's regular rate of pay for all hours worked in excess of forty (40) hours per workweek.

91.     During the FLSA period, Defendants were fully aware of Plaintiff's duties and that those duties were not exempt from the overtime provisions of the FLSA.

92.     Defendants knew that Plaintiff worked approximately sixty (60) hours every workweek.  However, Defendants did not pay for hours worked in excess of forty (40) hours per workweek.

93.     As a result of Defendants' conduct as alleged herein, Defendants violated the FLSA by not paying Plaintiff overtime at a rate of one and one-half times his regular rate of pay in excess of forty (40) hours per workweek.

94.     Defendants' violations of the aforementioned statute were willful, repeated, knowing, intentional and without a good faith basis, and significantly damaged Plaintiff.

95.     As a result of Defendants' conduct, which has significantly damaged Plaintiff, Defendants are liable to Plaintiff for no less than $540,000, *i.e.*, the full amount of overtime, plus an additional equal amount as liquidated damages, in addition to attorneys' fees and costs incurred by Plaintiff.

## SECOND CLAIM FOR RELIEF
(Failure to Pay Overtime in Violation of NYLL §650)

96.     Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

97.     The NYLL requires a covered employer, such as Defendants, to pay employees overtime at a rate of one and one-half times the employee's regular rate of pay in the manner and methods provided for in the FLSA.

98.     From 2019 through 2023, Plaintiff was not exempt from the requirement that Defendants pay him overtime under the NYLL and/or its regulations.

99.     Defendants knew that Plaintiff worked approximately sixty (60) hours per workweek for Defendants.  However, Defendants intentionally did not pay him overtime for hours worked in excess of forty (40) hours per workweek.

100.    As a result of Defendants' failure to pay Plaintiff overtime at a rate of one and one-half times his regular rate of pay for hours worked in excess of forty (40) hours per workweek, Defendants violated the NYLL.

101.    The foregoing conduct of Defendants constitutes willful violations of the NYLL.

102.    As a result of Defendants' conduct, which has significantly damaged Plaintiff, Defendants are liable to Plaintiff for no less than $540,000, *i.e.*, the full amount of overtime, plus an additional equal amount as liquidated damages, in addition to attorneys' fees and costs incurred by Plaintiff.

## THIRD CLAIM FOR RELIEF
(Recordkeeping violations under the FLSA)

103.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

104.    The FLSA record-keeping provisions require employers to keep accurate payroll records.

105.    During the relevant time period, Defendants supplemented Plaintiff's pay in cash, and did not keep proper documentation.

106.    Upon information and belief, Defendants made willful misrepresentations to conceal the actual wages furnished.

107.    Defendants also failed to record the correct number of hours of work that Plaintiff performed for Defendants each week.

108.    Defendants knew that Plaintiff worked approximately sixty (60) hours per workweek for Defendants, but only recorded Plaintiff as having worked forty (40) hours per week.

109.    Defendants' actions violated the recordkeeping provisions of the FLSA and bolster Plaintiff's claims of overtime violations.

110.    As a result of Defendants' willful FLSA recordkeeping and overtime violations, Defendants are liable to Plaintiff for the full amount of unpaid wages, plus an additional equal amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff.

## FOURTH CLAIM FOR RELIEF
### (Age Discrimination in Violation of the NYSHRL)

111.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

112.    Plaintiff is fifty-nine (59) years old and is a member of a protected class on account of his age.

113.    Plaintiff endured jokes that he should be "put out to pasture in the river", was greeted as "old man" and referred to as "papi".

114.    In or around March 2023, Defendants terminated Plaintiff and replaced him with a younger employee.

115.     Specifically, D. Ferraro informed Plaintiff that he was being terminated because, in Defendant D. Ferraro's words, "although there is nothing wrong with your performance, we are getting older and we need new blood in the Company."

116.     As set forth more fully above, Defendants discriminated against Plaintiff on account of his age with respect to the terms, conditions and/or privileges of his employment, and by terminating his employment in violation of the NYSHRL.

117.     Defendants E. and D. Ferraro are liable under the State Human Rights Law § 296(1).

118.     As a direct and proximate cause of Defendants discriminating against Plaintiff on account of his age and in violation of the provisions of the NYSHRL, Galvan has suffered damages and is entitled to relief, including but not limited to an award, *inter alia*, of reinstatement, back pay, front pay, benefits, attorneys' fees, compensatory damages for emotional and physical distress, and an award of punitive damages against Defendants in the amounts to be determined by a jury at trial, but believed to be in excess of $1 million dollars, with interest thereon.

**FIFTH CLAIM FOR RELIEF**
(Disability Discrimination in Violation of the NYSHRL)

119.     Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

120.     As set forth more fully above, in or around January 2023, Plaintiff was a qualified individual with a disability within the meaning of the NYSHRL in that he suffered from a physical impairment that necessitated a reasonable accommodation in order for him to continue performing his duties.

121.     Rather than accommodate Plaintiff, Defendants required Plaintiff to return to

14

work just a few weeks after his injury, and before his foot had time to properly heal.

122.    Defendants then terminated Plaintiff's employment in or around March 2023.

123.    As set forth more fully above, Defendants discriminated against Plaintiff on account of his disability with respect to the terms, conditions and/or privileges of his employment, and by terminating his employment in violation of the NYSHRL.

124.    Defendants E. and D. Ferraro are liable under the State Human Rights Law § 296(1).

125.    As a direct and proximate cause of Defendants discriminating against Plaintiff on account of his disability in violation of the provisions of the NYSHRL, Galvan has suffered damages and is entitled to relief, including but not limited to an award, *inter alia*, of reinstatement, back pay, front pay, benefits, attorneys' fees, compensatory damages for emotional and physical distress, and an award of punitive damages against Defendants in the amounts to be determined by a jury at trial, but believed to be in excess of $1 million dollars, with interest thereon.

### SIXTH CLAIM FOR RELIEF
(Failure to Accommodate under the NYSHRL)

126.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

127.    As set forth more fully above, in or around January 2023, Plaintiff was a qualified individual with a disability within the meaning of the NYSHRL.

128.    In or around January 2023, Plaintiff suffered from a physical impairment which necessitated a reasonable accommodation in order for him to continue performing his duties.

129.    Defendants did not provide Plaintiff with a reasonable accommodation.

15

130.    Rather than accommodate Plaintiff, Defendants required Plaintiff to return to work just a few weeks after his injury, and before his foot had time to properly heal.

131.    Defendants then terminated Plaintiff's employment in or around March 2023.

132.    As a direct and proximate cause of Defendants' failure to accommodate Plaintiff's disability, Galvan has suffered damages and is entitled to relief, including but not limited to an award of, *inter alia*, reinstatement, back pay, front pay, benefits, attorneys' fees, compensatory damages for emotional and physical distress, and an award of punitive damages against Defendants in the amounts to be determined by a jury at trial, but believed to be in excess of $1 million dollars, with interest thereon.

**SEVENTH CLAIM FOR RELIEF**
(Against Evan and David Ferraro for Aiding and Abetting
Discrimination Under the NYSHRL)

133.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

134.    As set forth more fully above, E. Ferraro and D. Ferraro aided and abetted Rolling Lawns' age and disability-based discrimination against Plaintiff in violation of the NYSHRL.

135.    Aiding and abetting Rolling Lawns age and disability-based discrimination violates the provisions of Section 296 of the State Human Rights Law.

136.    As a direct and proximate cause of E. Ferraro and D. Ferraro aiding and abetting age and disability based discrimination against Mr. Galvan in violation of the provisions of the State Human Rights Law, Mr. Galvan has suffered damages and is entitled to relief, including but not limited to an award, *inter alia*, of reinstatement, back pay, front pay, benefits, compensatory damages for emotional distress, and an award of punitive damages in amounts to be determined by a jury at trial.

**EIGHTH CLAIM FOR RELIEF**
(Hostile Work Environment Claim Under the NYSHRL)

137.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

138.    Plaintiff is fifty-nine (59) years old and is a member of a protected class on account of his age.

139.    In or around 2019, Defendants demoted Plaintiff from Foreman back to a Laborer.

140.    From 2022 through 2023, Defendants subjected Plaintiff to unwanted harassment on account of his age by constantly making jokes and comments about Plaintiff's age.

141.    During this time period, Defendants also removed Plaintiff's desk from the Garage, and told employees to stop listening to him.

142.    Defendants' harassment and discrimination unreasonably interfered with Plaintiff's work performance by creating an intimidating, offensive, and hostile work environment.

143.    Plaintiff's work environment was permeated with hostility as a result of unlawful discriminatory actions by Defendants' owners, E. Ferraro and D. Ferraro.

144.    Defendants' actions were severe and pervasive and continued from 2019 through 2023.

145.    Defendants' actions violated the NYSHRL.

146.    As a direct and proximate cause of Defendants discriminating against Plaintiff on account of his age, and creating a hostile work environment in violation of the provisions of the NYSHRL, Galvan has suffered damages and is entitled to relief, including but not limited to an award of, *inter alia*, reinstatement, back pay, front pay, benefits, attorneys' fees, compensatory damages for emotional and physical distress, and an award of punitive damages against

Defendants in the amounts to be determined by a jury at trial, but believed to be in excess of $1 million dollars, with interest thereon.

## NINTH CLAIM FOR RELIEF
(Failure to Provide Wage Notices in Violation of
NYLL §§ 195(1), 198, and 650 *et seq.*)

147.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

148.    Defendants failed to provide Plaintiff with wage notices in violation of NYLL § 195(1).

149.    Plaintiff seeks and is entitled to recover statutory damages as provided by NYLL § 198 for these violations, together with attorneys' fees, and costs.

## TENTH CLAIM FOR RELIEF
(Failure to Furnish Wage Statements in Violation of
NYLL §§ 195(3), 198, and 650 *et seq.*; and 12 NYCRR § 142-2.7)

150.    Plaintiff hereby realleges and incorporates each and every one of the preceding paragraphs as though they were fully set forth herein.

151.    Throughout Plaintiff's employment, Defendants failed to furnish Plaintiff with accurate, written wage statements listing, *inter alia*, dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of the employer; rate or rates of pay and basis thereof; gross wages; deduction; allowances, if any, claimed as part of the minimum wage; net wages; regular hourly rate; overtime rate; number of regular hours worked; and the number of overtime hours worked.

152.    Plaintiff seeks and is entitled to recover statutory damages as provided by NYLL § 198 for these wage statement violations, together with attorneys' fees, and costs.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment as follows:

1.      An award of damages in an amount equal to the unpaid overtime pay, plus an additional equal amount as liquidated damages;

2.      An award of back pay, front pay, and other compensatory and punitive damages for defendants' intentional, willful and malicious conduct, including, but not limited to, damages for future pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, injury to reputation, and other non-pecuniary losses;

3.      An award of liquidated damages for Defendants' intentional and willful conduct engaged in with malice and/or reckless indifference to Plaintiff's statutorily protected rights;

4.      Pre-judgment and post-judgment interest at the maximum rate allowable at law;

5.      An award of attorney's fees, costs, and expenses incurred in the prosecution of this action;

6.      Such further legal and equitable relief as this Court deems just and proper.


Dated:  New York, New York
        August 1, 2023

                                        KALMANSON COHEN, PLLC

                                        *Randi Cohen*
                                        _____
                                        Randi M. Cohen (RC4448)
                                        Joni Kletter (JK3219)
                                        One Liberty Plaza
                                        165 Broadway, 23rd Floor
                                        New York, NY 10006
                                        T: (646) 759 3655
                                        F: (646) 513 2936
                                        E: randi@kalmansoncohen.com
                                        E: joni@kalmansoncohen.com
                                        *Attorneys for Plaintiff,*
                                        *Nepamuceno Galvan*

19