

**Steven J. Moser**
Tel: 631-824-0200
steven.moser@moserlawfirm.com

October 4, 2023

**VIA ECF**

Hon. Cathy Seibel, USDJ
United States District Court
Southern District of New York
300 Quarropas St.
White Plains, NY 1001

      Re:    *Galvan v Rolling Lawns, Inc et al.,* Case No. 7:23-cv-06724(CS)

Dear Judge Seibel:

      I represent the Defendants in the above referenced action. Pursuant to the Court's Individual Practices the Defendants respectfully request a pre-motion conference regarding an anticipated motion to dismiss pursuant to FRCP 12(b)(6).

      **Introduction.** The complaint asserts overtime claims under the Fair Labor Standards Act (FLSA) and the New York Labor Law (NYLL)(1st and 2nd Claims), recordkeeping claims under the FLSA (3rd Claim), age and disability discrimination under the New York State Human Rights Law (NYSHRL)(4th – 8th Claims), and statutory damages for failure to provide a hiring notice (9th Claim) and failing to provide wage statements under the NYLL (10th Claim).[1] The complaint asserts that Rolling Lawns, Inc. has been a "family-owned" landscaping business since 1955,[2] and is currently operated by David Ferraro and his son, Evan Ferraro.[3] The Plaintiff seeks overtime in the amount of $540K, an additional $540K as liquidated damages, and damages in excess of $1M on each of the following claims: 4th, 5th, 6th & 8th.[4]

      **Plaintiff's FLSA and NYLL overtime claims (1st and 2nd Claims) have not been sufficiently pled.** The complaint asserts the Plaintiff "*regularly worked* sixty (60) hours per week for Rolling Lawns" and that he worked "from approximately 7:15 a.m. to 5:30 p.m. six (6) days per week, Monday through Saturday, with a thirty (30) minute lunch break each day." (¶¶ 35, 38 (emphasis supplied).[5] This Court has noted that "[a]llegations that the plaintiff 'typically,'

---

[1] *See* Complaint (ECF No. 1), a copy of which is annexed hereto as Exhibit 1.
[2] Complaint ¶¶ 20-21.
[3] Complaint ¶¶ 9-15.
[4] See Complaint ¶¶ 95, 102 ("Defendants are liable to Plaintiff for no less than $540,000, i.e., the full amount of overtime, plus an additional equal amount as liquidated damages"); ¶¶ 118, 125, 132, 146 (each alleging that damages for these counts are "believed to be in excess of $1 million dollars"
[5] With regard to wages, plaintiff claims that "[a]t no time did Defendants pay [him] at an overtime rate of pay." (¶ 40). Instead, after 2011 he was paid a salary of "around $98,000 per year." ¶ 45. Curiously, however, the Plaintiff claims that his wages were "supplemented" with cash (¶ 62) but does not say what these "supplements" were for.

Hon. Cathy Seibel, USDJ  
Re: *Galvan v Rolling Lawns, Inc et al.*, Case No. 7:23-cv-06724(CS)  
Page 2

MOSER LAW FIRM, PC 

'occasionally,' or 'often' worked certain shifts. . .do not suffice because such allegations 'invite[] speculation.'" *Watkins v. First Student, Inc.*, No. 17-CV-1519 (CS), 2018 U.S. Dist. LEXIS 32729, at *21 (S.D.N.Y. Feb. 28, 2018) (citing *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114-15 (2d Cir. 2013)). The Second Circuit has emphasized that that an FLSA overtime claim must plausibly allege work in excess of forty hours in a specific workweek. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 114-15 (2d Cir. 2013) (plaintiff must identify "a given workweek"; "a single workweek"; or a "particular week").

Plaintiff attempts to meet the standard another way - by claiming that he "*always* worked approximately sixty (60) hours per week." (¶ 38 (emphasis supplied)). However, if by "always" the plaintiff means "all workweeks", the Second Circuit has explicitly cautioned that "*Lundy's* requirement that plaintiffs must allege overtime without compensation in a 'given' workweek[] was not an invitation to provide an all-purpose pleading template alleging overtime in 'some or *all workweeks*.'" *DeJesus v. HF Mgmt. Servs.*, 726 F.3d 85, 90 (2d Cir. 2013) (emphasis supplied).

**The Plaintiff does not have standing to assert claims for failure to provide a hiring notice (9th Claim), and failing to provide wage statements (10th Claim).** Plaintiff was hired in 1991, long before the effective date of the WTPA. "As there was no private right of action for time-of-hire violations prior to the WTPA, courts have consistently held that an employer's failure to provide a wage notice at the time of hiring cannot support a WTPA claim brought by a plaintiff hired before the WTPA's effective date." *Elvey v. Silver's Crust W. Indian Rest. & Grill, Inc., No. 18 Civ. 126 (FB) (VMS)*, 2019 U.S. Dist. LEXIS 112908, at *31 (E.D.N.Y. July 3, 2019) (collecting cases). Moreover, the Plaintiff has not alleged any "concrete and particularized injury" arising from the alleged technical violations of the NYLL and therefore the Plaintiff lacks article III standing to pursue these claims. *Guthrie v. Rainbow Fencing Inc.*, No. 21-CV-5929 (KAM)(RML), 2023 U.S. Dist. LEXIS 31177, at *10 (E.D.N.Y. Feb. 24, 2023).

**The Plaintiff has not alleged facts to plausibly establish the existence of a disability (5th, 6th & 7th Claims).** Claims under the NYSHRL require proof of the same elements as an ADA claim. *Kinneary v. City of N.Y.*, 601 F.3d 151, 158 (2d Cir. 2010). "The Second Circuit has explained that, in order to plausibly plead a disability under the ADA, a plaintiff must allege facts as to *how* his or her impairments substantially limit their major life activities." *Rogers v. Niagara Cnty.*, No. 1:22-CV-00792 JLS(MJR), 2023 U.S. Dist. LEXIS 162817, at *13 (W.D.N.Y. Sept. 12, 2023) (citing *Morey v. Windsong Radiology Grp., P.C.*, 794 F. App'x 30 (2d Cir. Dec. 12, 2019)). "Stated another way, where a plaintiff fails to 'detail the frequency, duration, or severity of [an] alleged [disability], and how [it] affected [him] at the time of [his] employment,' [the] claim for disability discrimination must fail." *Rodriguez v. N.Y. City Dep't of Educ., 21-CV-3561*, 2022 WL 4484576, at *5 (S.D.N.Y. Sept. 26, 2022) (citing *Rogers v. Niagara Cnty.*, No. 1:22-CV-00792 JLS(MJR), 2023 U.S. Dist. LEXIS 162817, at *13 (W.D.N.Y. Sept. 12, 2023)).

Here the plaintiff alleges that he "suffered two (2) broken bones in his foot" in January 2023.[6] (¶ 68). He doesn't say whether he injured his *left* or *right* foot, what bones were broken, or

---

[6] "Broken bones that are not alleged to have had long-term or permanent consequences are temporary impairments", not disabilities. *Smith v. Reg'l Plan Ass'n*, No. 10 Civ. 5857 (BSJ) (KNF), 2011 U.S. Dist. LEXIS 117712, at *14-15

Hon. Cathy Seibel, USDJ  
Re: *Galvan v Rolling Lawns, Inc et al.*, Case No. 7:23-cv-06724(CS)  
Page 3

MOSER LAW FIRM, PC 

the nature of the alleged fracture.  He provides even less factual information about his physical condition and limitations when he returned to work in February 2023.  Although he claims that he "suffered the physical consequences of working a manual labor job on an *injured* foot" (¶ 74), he doesn't specify the injury or mention what the physical consequences were. Most importantly, he does not say that he had any physical impairment upon his return to work.  In fact, although he claims that he was in a "weakened state" when he returned to work, he was able to "push heavier carts, climb on top of trucks and work faster." (¶ 76).

**The Plaintiff has not plausibly alleged age discrimination (4th & 7th Claims).** According to Mr. Galvan David Ferraro gave his son Evan Ferraro "a twenty-two (22) year-old with no management experience" (¶ 48) "significantly more authority" in the family business (¶ 47).  Mr. Galvan claims that in 2019 Evan Ferraro "was given a larger role within the Company and became a full-time executive" (¶ 48), while Mr. Galvan was "stripped" of his managerial responsibilities "that he had worked so hard to earn[.]" (¶ 53).  However, antidiscrimination law does not prohibit nepotism, "so long as it is not premised on animus against a protected class." *See Vill. of Freeport v. Barrella*, 814 F.3d 594, 613 (2d Cir. 2016).

Moreover, the Plaintiff does not identify any facts from which it can be concluded that age was a motivating factor in the employment decisions made by Evan Ferraro between 2019 and 2023.  He claims that Evan Ferraro "sought to deploy a younger workforce, favoring and hiring younger workers, and pushing out and demoting the older-long dedicated-team members, like Mr. Galvan." ¶ 50.  However, he gives no specific example or fact which would support this claim.  Moreover, Mr. Galvan admits that the workforce was comprised of as few as ten (10) employees at times (¶ 27) and that up to 4 employees (40% of the workforce) were over 40 (¶52).

**Plaintiff has not pled sufficient facts to maintain a hostile work environment claim (8th Claim).**  Plaintiff claims that beginning in 2022 he "endured jokes that he should be 'put out to pasture in the river', was greeted as 'old man' and referred to as 'papi'"  He does not say *who* said these things to him, *when* these things were said, *how often* they were said, *who* was present, or furnish any other facts.  While a complete analysis of what conduct is sufficiently "severe and pervasive" to constitute discrimination is beyond this letter, the Plaintiff has not even attempted to meet standard for pleading "severe and pervasive" conduct. *See Langella v. Mahopac Cent. Sch. Dist.*, No. 18-cv-10023 (NSR), 2022 U.S. Dist. LEXIS 2156, at *29 (S.D.N.Y. Jan. 5, 2022) (holding that even specific allegations that "several comments" were made regarding the plaintiff's age, being "asked by Defendants when he would retire" and "[c]omments . . . that he spoke too loudly" did not constitute actionable discrimination).

Very truly yours,

*Steven J. Moser*  
Steven J. Moser

CC:   All counsel of record via EC

---

(S.D.N.Y. Oct. 7, 2011) ("Fractured bones do not generally qualify as a disability within the meaning of the ADA");  
*Id.* ("Fractured bones do not generally qualify as a disability within the meaning of the ADA").