UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEPAMUCENO GALVAN,, <br><br>                              Plaintiff, <br>  v. <br><br> ROLLING LAWNS, INC., DAVID FERRARO and EVAN FERRARO, <br><br>                              Defendant. | 23-cv-06724 (CS) |

**DEFENDANTS' <u>REPLY</u> MEMORANDUM OF LAW IN <u>FURTHER SUPPORT</u> OF DEFENDANTS' MOTION FOR A PROTECTIVE ORDER AND TO QUASH PLAINTIFF'S SIX NON-PARTY SUBPOENAS TO DEFENDANTS' CUSTOMERS**

Steven John Moser (SM1133)
MOSER LAW FIRM, P.C.
5 East Main Street
Huntington, NY 11743
(516) 671-1150
smoser@moseremploymentlaw.com
*Attorneys for Defendants*

## TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ................................................................................................... 1

**ARGUMENT** ................................................................................................................................ 3

    I.    THE PLAINTIFF HAS FILED DOCUMENTS IN OPPOSITION TO DEFENDANTS' MOTION IN DIRECT VIOLATION OF THE COURT'S CONFIDENTIALITY ORDER .... 3

    II.    THE SUBPOENAS HAVE AN ADMITTEDLY IMPROPER PURPOSE AND PLAINTIFF ADMITS THAT THEY ARE INTENDED TO CIRCUMVENT PARTY DISCOVERY ................................................................................................................... 4

    III.    THE PLAINTIFF IS SEEKING IRRELEVANT INFORMATION .................................. 5

        A.    Plaintiff has not submitted anything to refute his prior sworn statement that Rolling Lawns' customers do not have discoverable information. ................................................ 5

        B.    Plaintiff's Memorandum of Law suggests that the Plaintiff does not know or have a good faith belief that the customers he subpoenaed to testify actually have relevant information. 6

        C.    The testimony sought is unnecessary in light of the relaxed burden of proof afforded FLSA/NYLL plaintiffs in the absence of adequate records ................................................... 6

    IV.    THE DEFENDANTS HAVE STANDING TO CHALLENGE THE SUBPOENAS ........ 8

    V.    THE COURT HAS THE INHERENT AUTHORITY TO LIMIT DISCOVERY ............. 9

**CONCLUSION** ........................................................................................................................... 10

**PRELIMINARY STATEMENT**

Plaintiff's actions in this case are truly unprecedented. Plaintiff has not identified a single case in which any state or federal court permitted an FLSA plaintiff to serve subpoenas upon a his former employer's customers. Plaintiff also believes that the failure of the parties to identify a non-party as having relevant information does not indicate whether the non-party actually has relevant information.[1]

In opposition to the Motion for a Protective Order and to Quash, the Plaintiff has publicly filed documents marked as "CONFIDENTIAL"[2] in *direct violation* of the Court's Confidentiality Order (ECF No. 28).[3]

The following timeline is undisputed:

- **August 1, 2023.** Plaintiff sues Rolling Lawns, Inc. for FLSA overtime violations, claiming that he worked sixty (60) hours a week, every week, for more than 30 years.[4] He claims that he worked from 7:15 a.m. to 5:30 p.m. six days a week with a 30-minute lunch break each day.[5] He admits that he punched-in at the beginning of the workday and punched-out at the end of the workday.[6]

- **May 13, 2024.** The Parties furnish their initial disclosures, which do not identify any customer of Rolling Lawns, Inc. as having relevant information. These disclosures are never amended.

- **May 21, 2024.** The Court So-orders a Confidentialy Stipulation which prohibits the disclosure of documents furnished in the course of discovery which are marked as "CONFIDENTIAL." *See* ECF No. 28.

- **July 8, 2024.** Plaintiff provides an unverified response to Defendants Interrogatory No. 1. stating, by omission, that customers of Rolling Lawns, Inc. do not have

---

[1] *See* Plaintiff's Memorandum of Law in Opposition, at 5 (stating that "Defendants offer no support for their argument that the identification of a non-party – or the lack thereof – is an indication of whether a non-party has relevant information").
[2] *See* Documents Bates stamped DEF000210 and DEF000211, clearly marked as CONFIDENTIAL by the Defendant, yet filed as Exhibit C to the Declaration of Randi M. Cohen in opposition to Defendants' Motion for a Protective Order and to Quash.
[3] A copy of the Confidentiality Order is annexed to the Declaration of Steven Moser dated August 12, 2024 as Exhibit 1.
[4] Complaint 35, 57
[5] Complaint 36, 58.
[6] Complaint 37.

1

relevant information. Instead, only 8 current and former employees of Rolling Lawns (5 of whom are non-parties) are identified as having relevant information.

- **July 8, 2024.** In response to Plaintiff's discovery requests, Defendants furnish Plaintiff's electronic "punch-in" and "punch-out" records for 2020, 2021, 2022 and 2023. These records directly contradict Plaintiff's statement that his punch records accurately reflect his work and that he worked 60 hours each week. Defendants also furnish all of Plaintiff's payroll records for the years 2020, 2021, 2022 and 2023. These records show that after Plaintiff claims he was "demoted" to the title of "laborer", he was paid a yearly salary of between $61,240.65 and $75,886.49. Plaintiff's counsel, however, now claims that Galvan was paid much more for being a laborer, and that in addition to the salary of betweek $61K and $75K per year, he was paid $40K a year in cash.

- **July 11, 2024.** Plaintiff does not serve non-party subpoenas on the 5 non-party witnesses identified in his initial disclosures. Instead, Galvan's counsel prepares subpoenas to depose Rolling Lawns' most valued customers who were never identified as likely to have relevant information.

- **July 12, 2024.** Plaintiff states under oath *after the customer subpoenas have already been prepared* that his response to Interrogatory No. 1 of January 8, 2024, which effectively states that the customers do not have relevant information, is true and correct. On the same day Plaintiff's counsel states unequivocally that Mr. Galvan's response Interrogatory No. 1 is complete.

- **July 24, 2024**. After being given leave by the Court, the Defendants move for a protective order and to quash the non-party subpoenas.

- **August 2, 2024, 3:50 p.m.** The Court alerts Plaintiff that he has not timely opposed the motion and *sua sponte* grants an extension until August 9, 2024. Less than 30 minutes later, at 4:13 p.m., Plaintiff's counsel furnishes a supplemental response to Interrogatory No. 1. However, this response is unverified. Also, despite the fact that Interrogatory No. 1 seeks "a detailed description" of the knowledge possessed by non-parties, Galvan does not provide a detailed description of what he believes the customers know.

- **August 5, 2024.** Defendants notify Galvan that his Second Supplemental Response to interrogatory number 1 dated August 2, 2024 is vague, and ask for details about what Galvan claims the Rolling Lawns' customers know, including, with regard to "overtime", "(1) the specific workweeks in question, (2) the number of hours the Plaintiff allegedly worked during each workweek, and (3) how each customer knows such information", and with regard to "receiving cash payments" , "(1) the date(s) of each payment, (2) the amount of the payment (3) the payor, (4) the payee,

2

- (5) the reason for the payment, and (6) how each customer knows such information."[7]

- **August 6, 2024.** Plaintiff's counsel responds to the August 5, 2024 letter, saying that the Plaintiff will not furnish any further details about what he believes the customers possess.

- **August 7, 2024**. Defendants counsel sends a follow up letter pointing out, inter alia that:

    > "Discovery may be limited where "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26 limits the scope of discovery to matters that are "proportional to the needs of the case." Here, the Plaintiff has refused to provide details necessary to determine the benefit of the non-party depositions, and therefore whether they are proportional to the needs of the case.[8]

- **August 7, 2024.** Plaintiff opposes the Motion for a Protective Order and to Quash the customer subpoenas, attaching the *unverified* response to Interrogatory No. 1 dated August 2, 2024. Plaintiff files documents clearly designated as "CONFIDENTIAL" on the public docket in violation of the Court's Confidentiality Order, and yet argues that the Defendants are adequately protected by the Order.

- **August 9, 2024.** During a telephone call between counsel, Plaintiff's counsel states that the Plaintiff *cannot provide any details about what he believes the customers know,* and that what the customers' know will only become clear at the depositions.

Under these circumstances, the Defendants' motion for a protective order and to quash should be granted, and the costs and fees associated with this motion should be awarded.

## ARGUMENT

### I. THE PLAINTIFF HAS FILED DOCUMENTS IN OPPOSITION TO DEFENDANTS' MOTION IN DIRECT VIOLATION OF THE COURT'S CONFIDENTIALITY ORDER

The Court issued a Confidentiality Order on May 21, 2024.[9]. According to paragraph 4 of the Order,

---

[7] A copy of Defendants' letter dated August 5, 2024 is annexed to the Moser Decl. of August 12, 2024 as Exhibit 2.
[8] A copy of Defendants' letter dated August 7, 2024 is annexed to the Moser Decl. of August 12, 2024 as Exhibit 3.
[9] *See* ECF No. 28, annexed to the Declaration of Steven J. Moser dated August 12, 2024 as Exhibit 1. The proposed Confidentiality Order was drafted by Plaintiff's Counsel and approved by Defendants' Counsel with no changes, and was submitted by Plaintiff's Counsel on May 21, 2024 (ECF No. 27).

3

> Documents designated as "CONFIDENTIAL" shall not be disclosed to any person, except:
> a. The requesting party and counsel, including in-house counsel;
> b. Employees of such counsel assigned to and necessary to assist in the litigation;
> c. Consultants or experts assisting in the prosecution or defense of the matter, to the extent deemed necessary by counsel; and
> d. The Court (including the mediator, or other person having access to any Confidential Information by virtue of his or her position with the Court).
>
> Paragraph 12 of the Confidentiality Order states:
>
> All persons subject to this Protective Order acknowledge that willful violation of this Protective Order could subject them to punishment for contempt of Court. This Court shall retain jurisdiction over all persons subject to this Protective Order to the extent necessary to enforce any obligations arising hereunder or to impose sanctions for any contempt thereof.

Nevertheless, not only does Plaintiff file documents designated by Defendants as "CONFIDENTIAL" in his opposition to the Defendants' motion[10], he puts the integrity of the Confidentiality Order at issue by claiming that it sufficiently protects the Defendants from unwanted disclosure.[11]

## II. THE SUBPOENAS HAVE AN ADMITTEDLY IMPROPER PURPOSE AND PLAINTIFF EFFECTIVELY ADMITS THAT THEY ARE INTENDED TO CIRCUMVENT PARTY DISCOVERY

Turning to the Plaintiff's opposition, it reads like a motion to compel.[12] In fact, the Plaintiff's opposition implies that the subpoenas are a form of "self-help" and constitute punishment for perceived non-compliance with his discovery demands. The Plaintiff claims that "the Subpoenas are the result of Defendants' own conduct, conduct Defendants cannot now hide behind to quash the subpoena"[13] and that the subpoenas are proper "in the face of Defendants'

---

[10] *See* Documents Bates stamped DEF000210 and DEF000211, clearly marked as CONFIDENTIAL by the Defendant, yet filed as Exhibit C to the Declaration of Randi M. Cohen in opposition to Defendants' Motion for a Protective Order and to Quash.

[11] *See* Plaintiff's Memorandum of Law, at 9 (citing to the Confidentiality Order, ECF No. 28).

[12] In the very first sentence of the Plaintiff's Preliminary Statement, he voices his dissatisfaction with Defendants' document production. *See* Defendant's MOL, at 1(complaining that "Defendants, in response to a discovery demand requesting records related to an employee with a 30-year tenure, produced only 240 pages of documents.").

[13] Plaintiff's Memorandum of Law, at 4.

4

obstinance and failure to produce records[.]"[14] As will be mentioned later, however, the Plaintiff did not serve subpoenas to obtain documents, but subpoenas to testify.

The Plaintiff also appears to concede that the purpose of the subpoenas is to circumvent party discovery. Plaintiff explains that he "tried to obtain the information sought in the Subpoenas from Defendants. Defendants refused to produce the information."[15] Then, *before* raising any deficiencies directly with the Defendants or filing a motion to compel, Plaintiff prepared subpoenas to "customers of Defendants who *may*[16]" have information that they believe was withheld. However, as already noted in Defendant's Memorandum of Law dated July 24, 2024,

> A Rule 45 subpoena is not an alternative to the meet and confer requirements of Rule 37 and the appropriate procedures for bringing discovery disputes to the Court for resolution. If the Plaintiffs believed that the Defendants responses to its discovery requests were deficient in any regard, then the appropriate course would have been to file a motion to compel, not to serve a subpoena[.]

*Lemoine v. Mossberg Corp.,* No. 3:18-CV-01270 (KAD), 2020 WL 3316118, at *3 (D. Conn. June 18, 2020).

### III. THE PLAINTIFF IS SEEKING IRRELEVANT INFORMATION

#### A. Plaintiff has not submitted anything to refute his prior sworn statement that Rolling Lawns' customers do not have discoverable information.

As previously noted in the timeline, *supra* the Plaintiff stated under oath on July 12, 2024 *after* preparing subpoenas on the customers of Rolling Lawns, that only 8 current and former employees of Rolling Lawns have relevant information. Plaintiff now attempts to overcome this statement by submitting a supplemental *unverified interrogatory* in response to Defendants' Motion for a Protective Order and to Quash that conveniently identifies the customers. However, Plaintiff has made two statements, only one of which was made under oath, and which should be

---

[14] Plaintiff's Memorandum of Law, at 4.
[15] Plaintiff's Memorandum of Law, at 4, citing the Cohen Decl. ¶¶13, 20
[16] Plaintiff's Memorandum of Law, at 1 (emphasis supplied).

considered by the Court, as unsworn interrogatory responses are inadmissible hearsay. *Trs. of the 1199SEIU Nat'l Benefit Fund v. Lamaze*, No. 10 Civ. 4951 (PKC), 2011 U.S. Dist. LEXIS 106995, at *8 (S.D.N.Y. Sep. 20, 2011). The response made under oath *does not* identify the customers as having relevant information.

### B. Plaintiff's Memorandum of Law suggests that the Plaintiff does not know or have a good faith belief that the customers he subpoenaed to testify actually have relevant information.

Plaintiff's Memorandum of Law contains statements indicating that the customer subpoenas are, at best, a fishing expedition. Plaintiff claims at one point that the subpoenas are proper because these customers "may" have discoverable information [17], indicating that the customers "possibly could have", or "might have"[18] discoverable information. At another point he claims that the customers "potentially" have relevant information[19], suggesting that that "perhaps" or "possibly"[20] the customers have relevant information.

### C. The testimony sought is unnecessary in light of the relaxed burden of proof afforded FLSA/NYLL plaintiffs in the absence of adequate records

Plaintiff claims that he was an exempt manager "involved in all facets of the Rolling Lawns business" from 1998 through 2019, earning a salary of $98,000.00 a year.[21] Plaintiff admitted, and Defendants furnished a W-2 confirming that the Plaintiff was paid $97,879.19 in 2019.[22] Therefore, Plaintiff's claim that he was a non-exempt laborer in 2019 simply does not make sense.

---

[17] *See* Plaintiff's Memorandum of Law in Opposition, at 3 (stating that "[t]he Subpoenas were issued to a very limited number of Defendants' customers" who plaintiff "believes *may* have relevant. . .information").
[18] *See* https://www.wordreference.com/synonyms/may (last visited August 12, 2024)
[19] Plaintiff's MOL in Opposition, at 12, fn. 2  (stating that"Plaintiff has, in fact, identified approximately 15 customers with *potentially* responsive information" and Plaintiff "believes" that the customers "witnessed his working hours and *potentially* have relevant documentation."
[20] *See* https://dictionary.cambridge.org/us/thesaurus/potentially (last visited 8/12/2024)
[21] *See* Complaint 45-46
[22] *See* Complaint 61 (stating that in 2019, "Plaintiff's pay stubs totaled $97,879.19").

6

Nevertheless, even assuming that the Defendant failed to keep and preserve documents concerning the Plaintiffs working hours in 2019, this is not a valid reason to depose the Defendants' customers.

Plaintiff claims he has a an unfettered "right" to subpoena Defendants' customers "because Defendants have been either unable or unwilling to provide an accurate or detailed accounting of Plaintiff's hours, as required by law."[23] This "right" is not supported by citation to any legal authority. Nevertheless, Plaintiff claims that because the Defendants records are inadequate or inaccurate, the Plaintiff must resort to *self-help discovery* to prove his case. However, the Plaintiff does not need the testimony of Rolling Lawns' customers to prove his case.

Under the FLSA Defendants must "make, keep, and preserve" records of employee wages and conditions of employment." 29 U.S.C. § 211(c); *see also* 29 C.F.R. § 516.2. 1.[24] However, a Plaintiff is not without a remedy where an employer fails to keep adequate records. In 1946, the Supreme Court, in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 1192 (1946), noted that where an "employer's records are inaccurate or inadequate. . .the solution [] is not to penalize the employee by denying him any recovery on the ground that he is unable to prove the precise extent of uncompensated work." The remedy fashioned by the Supreme Court was a relaxed burden of proof under which the employee need only submit "evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* The Second Circuit has noted that this burden "is not high" and may be satisfied through an employee's "estimates based on his own recollection." *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)).

---

[23] *See* Plaintiff's MOL, at 6.
[24] The Plaintiff alleged a cause of action for improper recordkeeping under the FLSA (Compl. ¶¶ 103-110), which he later withdrew with prejudice (*See* So-Ordered Stipulation, ECF No. 19); nevertheless, the lack of an independent cause of action for improper recordkeeping does not leave an FLSA plaintiff without a remedy.

Plaintiff's argument that he needs the non-party customers' "testimony" is therefore without merit. Courts have never required a customer's "testimony" to establish NYLL/FLSA claims.

### IV.  THE DEFENDANTS HAVE STANDING TO CHALLENGE THE SUBPOENAS

Here the Plaintiff is not seeking the production of documents, although he suggests that the primary object is to obtain documents.[25] Instead, he is seeking to depose Defendants customers, and is asking them to bring certain documents that they may possess to their depositions. Therefore, the primary object of the subpoena is to obtain unspecified "testimony" from the Defendants' customers.[26] If the Plaintiff honestly wanted to obtain documents concerning "The hours Rolling Lawns performed work or services", "The hours that Plaintiff worked on behalf of Rolling Lawns", records of "Cash Payment to Plaintiff or other Rolling Lawns employees", or "Communications about or with Plaintiff"[27] he could have served a subpoena to obtain documents. He did not. Plaintiff wants to depose Rolling Lawns' customers regardless of whether they have any documents responsive to the subpoena.

Plaintiff proposes that a defendant employer must stand by while an FLSA plaintiff deposes the employers' customers against the employer's will. According to the Plaintiff, the remedy for not keeping adequate payroll records is not that the employee can meet his burden of proof through his own testimony, but instead that the employee can depose his employer's customers who might know the hours worked by the plaintiff. The employer's customers must either bear the cost of retaining legal counsel to oppose the motion or be deposed.

---

[25] *See* Plaintiff's Memorandum of Law, at 3.
[26] *See* Plaintiff's Memorandum of Law, at 3.
[27] *See* Plaintiff's Memorandum of Law, at 3.

Plaintiff has not cited a single case supporting the proposition that a party does not have standing to challenge a broad subpoena to testify to its own customers. Instead, Plaintiff cites *exclusively* to cases in which only documents were sought from non-parties. *See* Plaintiff's MOL, at 5, 7 & 10 (citing *Silverstone Holding Grp., LLC v. Zhongtie Dacheng (Zhuhai) Inv. Mgmt. Co.*, 650 F. Supp.3d 199, 202 (S.D.N.Y. 2023); *State Farm Mut. Auto. Ins. Co. v. Khait*, 21-cv-6690 (FB)(VMS), 2023 WL 6541583 (E.D.N.Y. 2023); *US Bank Nat. Ass'n*, No. 12 CIV. 6811 CM JCF, 2012 WL 5395249 (S.D.N.Y. 2012); *In re Terrorist Attacks on Sept. 11, 2001*, 523 F. Supp. 3d 478, 489 (S.D.N.Y. 2021); *Universitas Educ., LLC v. Nova Group, Inc.*, 11-cv-1590 (LTS)(HBP), 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013); *LG Cap. Funding, LLC v. Exeled Hldgs., Inc.*, 17-cv-4006 (LFL), 2023 WL 3993751 (S.D.N.Y. Jun. 14, 2023); *Chembio Diagnostic Sys., Inc. v. Saliva Diagnostic Sys., Inc.*, 236 F.R.D. 129, 136 (E.D.N.Y. 2006) *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014)[28] *US Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811 CM JCF, 2012 WL 5395249, at *2 (S.D.N.Y. 2012); *In re Rapid-Am. Corp.*, No. 13-10687 (SMB), 2018 WL 882398, at *3 (Bankr. S.D.N.Y. 2018)).

In short, the Plaintiff has failed to cite a single case supporting his "right" to depose the Defendant's customers. At the same time, the Plaintiff is seeking to depose those customers, even if they have no responsive records.

## V. THE COURT HAS THE INHERENT AUTHORITY TO LIMIT DISCOVERY

According to the Plaintiff, the Court has no authority to stop the Plaintiff from deposing the defendants customers unless the homeowners appear in the case either *pro-se* or through counsel and challenge the subpoenas. However, Plaintiff ignores the very language of Rule 26, which gives this Court inherent authority to *sua sponte* limit discovery that exceeds the scope of

---

[28] *See* Plaintiff's Memorandum of Law, at 9.

9

discoverable information under Rule 26, *i.e.,* "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); 26(c)(1); *see State Farm Mut. Auto. Ins. Co. v. Khait*, 2023 U.S. Dist. LEXIS 171968, at *5 (E.D.N.Y. Sep. 26, 2023)(noting that under Rule 26 the Court may "exercise its inherent power to limit the subpoena it exceeds Rule 26's scope.); *Allstate Ins. Co. v. All Cty., LLC,* No. 19 Civ. 7121 (WFK) (SJB), 2020 U.S. Dist. LEXIS 176297, 2020 WL 5668956, at *1 (E.D.N.Y. Sept. 22, 2020) (noting that a motion seeking to prevent compliance with a subpoena on relevance grounds is properly construed as a motion for a protective order—not a motion to quash—but acknowledging that "courts often use the language of quashing a subpoena when discussing relevance and proportionality"); *Hughes v. Hartford Life & Accident Ins. Co.*, 507 F. Supp. 3d 384, 405 (D. Conn. 2020)(a court has "inherent authority to limit irrelevant or non-proportional discovery.").

## CONCLUSION

For the foregoing reasons, Plaintiffs request that this Court issue a protective order, quash the subpoena, impose the costs associated with filing this motion upon the Plaintiff, and grant any other relief the Court deems just and proper.

Dated: Huntington, New York
August 12, 2024

                                        Respectfully Submitted,
                                        Moser Law Firm, P.C.

                                        By: Steven John Moser