```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2
    ----------------------------------------x
 3  NEPAMUCENO GALVAN,

 4                         Plaintiff,

 5                               23 CV 6724(CS)
         -vs-
 6                         DISCOVERY TELECONFERENCE

 7  ROLLING LAWNS, INC., DAVID FERRARO
    and EVAN FERRARO,
 8
                           Defendants.
 9
    ----------------------------------------x
10
                                   United States Courthouse
11                                 White Plains, New York

12                                 September 4, 2024

13  Before:   THE HONORABLE VICTORIA REZNIK,
                              United States Magistrate Judge
14

15  APPEARANCES:

16  KALMANSON COHEN, PLLC
         Attorneys for Plaintiff
17       One Liberty Plaza, 165 Broadway
         New York, New York 10006
18  KIMBERLY KALMANSON
    JONI H. KLETTER
19  RANDI M. COHEN

20  MOSER LAW FIRM, P.C.
         Attorney for Defendants
21       133 C New York Avenue
         Huntington, New York 11743
22  STEVEN J. MOSER

23


24


25  **Transcribed from digitally recorded proceedings**
```

                         OFFICIAL COURT REPORTER
                DARBY GINSBERG, RPR, RCR  (914) 390-4102

1            THE COURT:  Good morning.  This is the Galvan case.
2            Will counsel please introduce themselves, starting
3   with the plaintiff?
4            MS. KALMANSON:  Good morning, Your Honor.  Kim
5   Kalmanson, Randi Cohen, and Joni Kletter from Kalmanson Cohen
6   for plaintiff.
7            MR. MOSER:  And Steven Moser for the defendants.
8            THE COURT:  All right.  Good morning to all of you.
9   Sorry for the delay.
10           So we are here to check in on the status of discovery
11  since we last talked.  So let me start by asking about the
12  exchanges that we talked about on the last call.
13           Starting with the plaintiffs, did you provide the
14  information to the defendant relating to unemployment benefits
15  and whether any documents were being withheld on the basis of
16  privilege?
17           MS. KALMANSON:  We did, Your Honor.
18           THE COURT:  Okay.  And is there a timeline for
19  producing any privileged logs if necessary?
20           MS. KALMANSON:  Joni, correct me if I am wrong, but I
21  believe no documents were withheld on the basis of privilege.
22           MS. KLETTER:  Correct.
23           THE COURT:  Okay.  Great.  So next I believe,
24  Mr. Moser, you were supposed to be checking on the status of ESI
25  with your client, and the parties were to meet and confer and

1  discuss this by August 21st.  Has that happened?

2         MR. MOSER:  No, that has not.

3         THE COURT:  Okay.  Well, what's the status of that?
4  Explain what's going on.

5         MR. MOSER:  Well, we have invited the plaintiffs to
6  meet and confer regarding this on at least three occasions.  We
7  were supposed to meet and confer last week.  We again requested
8  their availability for a meet-and-confer, and they indicated
9  that they would be available this morning.  Unfortunately, I was
10 feeling under the weather this morning, so that didn't happen.

11        I have -- on our end, we have spoken to several
12 forensic individuals.  What the defendants have -- what the
13 plaintiffs have done instead is on August 22nd, they sent over a
14 list of search terms, but there has not been an agreed-upon ESI
15 production other than vaguely pdf, and, again, we are willing to
16 work with -- through these issues.

17        THE COURT:  Okay.  So let me ask, looking at my minute
18 entry, I think what we talked about was, just to be more
19 precise, that you were going to look with your client and
20 determine what, if any, ESI material exists, and then you were
21 going to tell the plaintiff what that was in a letter; and to
22 the extent that ESI did exist, you were going to include in your
23 letter how you proposed to produce it.  So at least let's start
24 there.

25        Did you confer with your client about what ESI exists

1  and determine the best way to produce it?
2              MR. MOSER: Yes.
3              THE COURT: Propose a way. Okay. So tell me, what
4  did you propose?
5              MR. MOSER: What we proposed doing was the ESI to -- I
6  -- again, I have been trying to have a meet-and-confer with the
7  plaintiffs since the last conference regarding this. We would
8  propose producing it in pdf format for the time being without
9  any metadata.
10             MS. KALMANSON: Your Honor, if I may?
11             THE COURT: I want to first finish with Mr. Moser
12 before you jump in.
13             MS. KALMANSON: Sorry. I apologize.
14             THE COURT: That's okay.
15             So go ahead. So you proposed producing it in pdf
16 format without metadata. What is the -- is there any other
17 aspect of the proposal or is that it?
18             MR. MOSER: Yeah, I mean, the -- I'm at this point a
19 little confused because the defendants have actually on
20 August 20 -- the plaintiffs as of August 22nd, proposed search
21 terms, and so now we are faced with do they want us to conduct
22 an in-house search for these search terms? Do they want us to
23 retain a forensic examiner to do this? because that would be
24 costly. Yeah.
25             THE COURT: Okay. Well, have you determined, though,

1  what exists?  I mean, the pdf's that you are talking about, what
2  exactly are we looking at?
3           MR. MOSER:  We are talking about text messages that
4  are located on the defendants' cellphones.
5           THE COURT:  Okay.  Anything else?  Are there emails or
6  things on computers or was it just text messages?
7           MR. MOSER:  According to my clients, it's just text
8  messages.
9           THE COURT:  Okay.  And so what you are saying is for
10 purposes of producing those text messages that exist, you would
11 somehow download them and turn them into pdf's and then produce
12 those; is that what you suggested?
13          MR. MOSER:  Correct.
14          THE COURT:  Okay.  And then in the meantime -- okay.
15 So let me -- and that was the full extent of the ESI that you
16 believed exists and that would be responsive is just the text
17 messages and nothing else?
18          MR. MOSER:  Correct.
19          THE COURT:  Okay.  So let me turn to plaintiff, and
20 then let me ask that you all identify yourselves before
21 speaking.
22          MS. KALMANSON:  Thank you, Your Honor.  This is Kim
23 Kalmanson.
24          So just to clarify, we -- it was our understanding
25 that the burden was on Mr. Moser to present to us the manner in

1  which he was going to produce ESI as Your Honor identified.  So
2  on August I believe was 21st, or whatever the date was in the
3  order, we asked Mr. Moser about what ESI exists.  He didn't have
4  the information at that point, but a day later he did provide us
5  with information that text messages existed.
6          He then asked us to propose an ESI protocol at which
7  point, even though it wasn't our burden, we created a list of
8  search terms and custodians and indicated that the documents
9  could be produced in pdf or TIFF at this point.  We sent that to
10 him.
11         It was then that he sought to meet and confer.  And
12 yes, he did ask to meet and confer a few times.  We were on
13 vacations at the end of summer, which is why we were supposed to
14 meet and confer this morning before the conference with Your
15 Honor, at which point Mr. Moser cancelled.  So, you know, just
16 to clarify the record on that, it wasn't that we were refusing
17 to meet and confer, we were refusing to provide any ESI
18 protocol; in fact, it was quite the opposite.
19         THE COURT:  Okay.
20         MS. KALMANSON:  We don't object to pdf.  That's, in
21 fact, what we proposed, but I am concerned that -- I would like
22 to know what searches were done to determine whether or not any
23 emails existed, only because, you know, we are basing it on just
24 the word of the clients.  I would be curious to know whether
25 since search terms were run through the emails to determine

1  whether any exists, irrespective of motive, people can forget
2  what they have emailed over the course of, you know, five,
3  six years.
4              THE COURT:  Okay.  So, Mr. Moser, it sounds like at
5  least the parties have some agreement on the format of producing
6  the text messages.  So the question is sort of:  What search did
7  you conduct to identify the responsive or relevant text
8  messages?
9              MR. MOSER:  I did not personally conduct the searches.
10 I consulted with my clients.
11             THE COURT:  Okay.  And what is the -- how did they
12 search for -- how did you direct them to search for relevant
13 text messages?
14             MR. MOSER:  I directed them to put in -- to search in
15 their cellphones for any documents related to Mr. Galvan, any --
16 you know, they have copies of the document requests that seek
17 communications.  Yeah.
18             THE COURT:  Okay.  So it sounds to me like the parties
19 haven't had an opportunity to talk through, in light of your
20 understanding of putting these in pdf format and how searches
21 were conducted, to have a meet-and-confer for various reasons,
22 which is fine, but I think I don't want to use the time on this
23 call for you all to conduct your meet-and-confer.  I think you
24 should do it offline.
25             But so I guess what I am going to suggest is that's

1  what you do.  You could either jump off after this call and call
2  each other to see if you have time to sort of talk through the
3  search terms and how things -- I don't know how search terms --
4  if that's the best way to do text messages searches or not.
5  That's something you can discuss, but it sounds like you need to
6  get to the bottom of sort of the universe of text messages, how
7  they were located and how they can best be produced.
8           Is there anything -- the other issue that we talked
9  about was nonparty witnesses producing documents.  I think the
10 plaintiffs were seeking documents from nonparties.  Can you give
11 me the status of that?  I don't know if it's Ms. Kalmanson or
12 somebody else.
13          MS. KALMANSON:  Yes, Your Honor.  So we reached out to
14 all of the nonparty witnesses and adjourned their depositions
15 without date and indicated that we were only seeking documents
16 at this point.
17          I believe we only heard back from one of the witnesses
18 who we are supposed to -- who we offered a call with to discuss
19 documents.  I believe -- and, Joni, correct me if I am wrong --
20 he said that no documents existed at that -- you know, in those
21 emails.
22          We reached out to them again yesterday to set up
23 followup calls to determine whether documents exist.  So that's
24 where that stands.
25          THE COURT:  Okay.  And so then why don't you tell me

1  how the parties intend to proceed with depositions in light of
2  the various rulings that we had last call and the exchanges of
3  documents that are going to be happening and whether you've
4  talked through new discovery deadlines to govern the remainder
5  of discovery.
6            As I look at your case management plan now,
7  depositions were scheduled to end September 16th.  That date
8  doesn't sound like that will work, although I don't know how
9  many more depositions the parties are planning to take at this
10 point.  Maybe none have happened so far.  I just -- I can't
11 actually recall.  Maybe, Ms. Kalmanson, you can remind me of the
12 deposition schedule and what depositions remain.
13           MS. KALMANSON:  No depositions have been taken to date
14 because we haven't received any ESI at this point, so we are not
15 moving forward; and Mr. Moser has for -- pending these disputes
16 as well -- adjourned Mr. Galvan's deposition without date.  He
17 had noticed it for I believe it was August 13th or something
18 like that.
19           So we are waiting for document productions to be
20 completed.  I guess the question is really how long Mr. Moser
21 will need to produce documents before we can figure out how much
22 time we would need for depositions.  I believe we noticed two,
23 plus the nonparties at this point, which have been adjourned
24 without dates.
25           THE COURT:  Okay.  And the documents, the only

1  documents you are waiting for at this point are the ESI, which
2  Mr. Moser believes is just in text message form; is that right,
3  or are there other documents?
4         MR. MOSER:  Your Honor, we received the first batch of
5  medical records pursuant to Mr. Galvan's disability claim, and
6  in those records, it turns out that we are missing
7  authorizations for at least two doctors, and so we requested the
8  authorizations.  I have no doubt that they will be forthcoming,
9  but just to process those authorizations, you know, and get the
10 medical records back, it can take a month sometimes.
11        And also with regard to the worker's compensation
12 records, there was a worker's compensation claim that was
13 opened, and we requested a worker's compensation authorization.
14 Again, I think that's something that we can work out between
15 ourselves, but we have not received -- we have, at best, partial
16 medical records; and we served a subpoena upon the Department of
17 Labor to obtain the unemployment records back in -- back in the
18 beginning of August, and we haven't received a response yet, but
19 we expect that to be forthcoming.  So --
20        THE COURT:  Okay.  Well, so I think at the end of our
21 last conference what I had contemplated was that the parties
22 would confer and would discuss, in light of these outstanding
23 document issues and the timing of when documents might be
24 produced, new discovery deadlines to govern the remainder of
25 discovery because it sounds like things are on hold until the

1  document issues are sorted, and then you still then need to
2  schedule all the depositions.
3             MR. MOSER:  Your Honor, I know the meet-and-confer,
4  although it was -- would have been last minute, I apologize for
5  not being able to attend that, but if I may make a suggestion to
6  the Court?
7             THE COURT:  Sure.
8             MR. MOSER:  And my suggestion would be that the
9  parties meet and confer regarding these outstanding issues and
10 propose a discovery schedule, and that if the Court has any
11 guidance in terms of when those timelines can be extended to,
12 that would be helpful.
13            THE COURT:  Well, so I think the parties -- well, you
14 were reading my mind because the next thing I was going to say
15 was that I was going to set a deadline for the parties to meet
16 and confer and to discuss the outstanding document issues and to
17 prepare the schedule, but is two weeks a sufficient amount of
18 time for the parties to be able to work through these issues and
19 propose a schedule?  Do you believe, Mr. Moser? because it
20 sounds like a lot of it depends on working through the ESI that
21 you have control over.
22            MR. MOSER:  Yes.
23            THE COURT:  Okay.  Do you have any thoughts about
24 that, Ms. Kalmanson, or any other plaintiff counsel?
25            MS. KALMANSON:  No.  Two weeks is more than

1  reasonable.
2          THE COURT:  Okay.  So then by Wednesday,
3  September 18th, the parties should meet and confer and propose a
4  schedule to the Court to govern the remainder of discovery.  So
5  I'll expect a joint letter submitted by the parties giving me an
6  update on your conversations and ideally attaching a proposed
7  revised case management plan with the deadlines that you would
8  like to enter for the remainder of depositions, any expert
9  discovery and the like.
10         You currently have a case management conference with
11 Judge Seibel scheduled for December 12th, so in my view, your
12 deadlines should work within that deadline -- within that date.
13 So in terms of guidance, ideally you won't need to move or
14 adjourn that case management conference with Judge Seibel.  You
15 should work toward being done with all discovery, including any
16 necessary expert discovery, so that you can appear before her on
17 December 12th.
18         If for some reason, after working through all the
19 dates, you don't think that's possible and you agree to that and
20 just let me know that in your joint letter and in your case
21 management plan, and we can talk about that and see what needs
22 to be done.
23         Do you have any questions about that, either side?
24         MS. KALMANSON:  No, Your Honor.
25         THE COURT:  Okay.  Great.

1              MR. MOSER:  Not from the defendants.

2              THE COURT:  Okay.  Great.  So are there any other
3    issues that need to be addressed today before I let you go to
4    work out these document issues?

5              MR. MOSER:  Yes.  Steve Moser for the defendant.

6              There is with regard to the statement as to whether
7    responsive documents have been withheld.  It's basically a
8    one-liner that says that the plaintiff is not withholding any
9    documents pursuant to their privilege or boilerplate objections.
10   We are now trying to define what looks like objections they are
11   referring to, and so it's still unclear as to whether, at least
12   from our perspective, as to whether responsive documents have
13   been withheld.

14             And the other issue is with regard to ESI, Mr. Galvan
15   has produced apparently text messages from a cellphone that he
16   owns, and our position is that we are happy to engage in ESI
17   discovery, but we want it to be reciprocal.

18             THE COURT:  Okay.  So let's take those one at a time.
19             I will start with the text messages.  I agree that it
20   makes sense that ESI discovery should be reciprocal.  So that's
21   something the parties should discuss in their meet-and-confer.
22   Whatever Mr. -- whatever the plaintiffs have done in order to
23   produce responsive ESI is something that you, Mr. Moser, should
24   also be doing on your end, but you can talk through that and
25   make sure that both parties are proceeding with that

1  understanding.
2          On the first issue raised, I think you are creating a
3  dispute where one shouldn't exist.  It sounds like the
4  plaintiffs have made it clear that they have not withheld any
5  responsive documents on the basis of any of their objections.
6          Am I right about that, Ms. Kalmanson?  Is that what
7  the intention was of what you wrote?
8          MS. KALMANSON:  It was, Your Honor.  And it was -- and
9  if Your Honor recalls, we also stated that in our letter to
10 Mr. Moser several weeks prior.
11         THE COURT:  Right.  So I'm not sure, Mr. Moser, what
12 more you need to assure yourself that they aren't withholding
13 any responsive documents.
14         MR. MOSER:  That's all that I needed.
15         THE COURT:  Okay.  Great.  I am glad we resolved it.
16         Okay.  Wonderful.  Perfect.  Okay.  So then what I
17 will do, I will leave you to meeting and conferring on the
18 remaining document issues and schedule.  If you can't agree --
19 which I am hoping you can -- but if you can't agree, just let me
20 know that in the joint letter that's due on September 18th, and
21 then I will try to address it for you.  But hopefully, you can
22 work something out without needing me to decide it for you.
23         And then when I get your letter and your proposed
24 schedule, I will -- if it looks reasonable, I will adjust the
25 deadlines accordingly, and then I will set another -- I will

```
 1  submit under separate order a scheduling order for another call
 2  like this one to check in with the parties.
 3          So is there anything else?  I am afraid to ask, but I
 4  want to make sure before I let you go, I will ask the
 5  plaintiffs:  Is there anything else you would like to raise or
 6  address today?
 7          MS. KALMANSON:  Not from plaintiffs, Your Honor.
 8          THE COURT:  Okay.  Great.
 9          And, Mr. Moser, I think you raised your issues, so I
10  will let you all go.
11          MR. MOSER:  Okay.
12          THE COURT:  And I will enter a minute entry that sets
13  the September 18th deadline just as a reminder, and I look
14  forward to hearing from you then.  Thanks very much.
15          MR. MOSER:  Thank you.
16          MS. KALMANSON:  Thank you, Your Honor.
17                              -o0o-
18
19
20
21
22          Certified to be a true and accurate transcript of the
23  digital electronic recording to the best of my ability.
24      /s/ Darby Ginsberg
        U.S. District Court
25      Official Court Reporter
```