

**Randi M. Cohen**
PARTNER

c (631) 806-3762
f (646) 513-2936
e randi@kalmansoncohen.com

October 29, 2024

**VIA ECF**
Hon. Victoria Reznik, USMJ
United States District Court for the Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

        Re: *Galvan v. Rolling Lawns, Inc. et al.*, Case No. 7:23-cv-06724(CS)(VR)

Dear Judge Reznik,

    We write on behalf of Plaintiff, Nepamuceno Galvan ("Nepa" or "Plaintiff") in the above-captioned action. This case arises out of age and disability discrimination and failure to pay overtime. We respectfully submit this letter to request a pre-motion conference relating to potential spoliation involving Defendants' belated ESI Production.

    As your Honor is aware, Defendants have been pressed by Plaintiff and the Court to produce ESI for months. Despite promise after promise to produce, it was only on October 22, 2024, under the threat of sanctions, that Defendants transmitted about 700 pages of text messages, the participants of which can only be gleaned by super sleuthing. The production reveals a host of disturbing issues—not the least of which is that it appears that there may have been significant spoliation by Defendants.

    Specifically, despite the volume of texts produced during 2022 and 2023, Defendants produced nearly no text messages related to the matters in dispute: **Plaintiff's injury, medical leave and/or termination**. We sent a letter to Defendants on October 25, 2024 (annexed hereto as Exhibit A) and made a good faith attempt to resolve these issues in accordance with the Federal Rules of Civil Procedure 26 and 34, and Local Rule 26.4. However, Defendants' response (annexed hereto as Exhibit B) ignored many of our concerns, and as to spoliation, was simply that Plaintiff was "speculating" and the parties should "schedule depositions."

**Spoliation Related to Plaintiff's Injury, Medical Leave and Termination**

    As an initial matter, Defendants' ESI production was produced in a hodgepodge fashion—the dates are disjointed, making it difficult to follow the threads and/or understand who the custodian is. There are almost no text messages during the *critical time frames*, January 2023 through April 2023. This is not just a matter of not having messages relating to the subjects in dispute—there are essentially no texts from those time periods, at all. This is inapposite from the otherwise established text patterns demonstrated by the production

There are little to no texts that **discuss Nepa's injury, Nepa's medical leave and/or Nepa's termination**. It is not credible that there was not a single message about Nepa's termination. This is particularly suspicious with regard to the communications between Defendant Evan Ferraro and employee Carmen Vazquez. These individuals communicated multiple times a day for years <u>about the schedules and projects of the Rolling Lawns' employees</u>. In fact, during 2022, Nepa was ever present in the daily text streams. However, **no messages were produced during the two critical time periods: (1) January 19, 2023 through February 20, 2023—when Nepa was injured and out of work, and (2) March 19, 2023 through April 10, 2023**—the time period when Defendants fired Nepa. It strains credulity: (a) that there were no messages then, when the pair messaged nearly every day; and (b) that Evan never had a single communication with Carmen via text—who handled scheduling via text message—about the fact that Nepa was no longer on the schedule or handling projects.

This, combined with the fact that the text threads between Evan and Defendant David Ferraro (Evan's father) mysteriously stop after January 23, 2023 (right when Nepa broke his foot), raise a strong inference of either intentional withholding of relevant material, or worse, spoliation. It is inconceivable that Evan and David Ferraro would not have discussed Nepa's accident, medical leave, and termination, at all. To be sure, despite the various threads of text messages, Defendants produced *not a single message during this critical time period <u>of Nepa's termination from any custodian</u>*.[1]

### David Ferraro and Alfonso Galvan's Phones

Despite agreeing to produce all responsive text messages from David Ferraro and employee Alfonso Galvan, it is unclear if any messages from David Ferraro's or Alfonso Galvan's phones were searched and/or produced. Defendants' did not respond to a request for clarification on this.

### Schedules and Wage Payments

On numerous text threads, reference is made to employee schedules and assignments being inputted into "jobber" and "the tablet". Any and all documents relating to scheduling were demanded in Plaintiff's Document Demands (*see e.g.* Request No. 23) and are ***squarely relevant*** to Plaintiff's claims. Defendants' production was devoid of even a single document from Jobber or the Tablet. Defendants' did not address or respond to this request from Plaintiff following Defendants' October 22, 2024 production.

### Moser as Client

---

[1] Of note, an initial claim letter in this case was sent on May 18, 2023--putting Defendants on notice of the claims as early as that date. Plaintiff asked Defendants to provide evidence of when a litigation hold notice was put in place. Defendants failed to respond to this request.

2

The text messages further reveal that someone named "Moser" was a client of Rolling Lawns from at least 2019 through 2021, if not longer. Plaintiff asked Defendants to identify whether Counsel or a family member was or is a Rolling Lawns' Client. This is concerning because Plaintiff views Rolling Lawns' customers to be material witnesses. Defendants' failed to respond to this request from Plaintiff.

### Redactions

Plaintiff has repeatedly asked Defendants to explain the bases for redactions on certain documents and to produce a privilege log. They have failed to do so. In the newest batch of documents, Defendants interposed redactions on a schedule. Defendants admitted to having placed redactions on other documents for purported non-responsiveness. This is not a proper basis for redaction. *See John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 185-86 (S.D.N.Y. 2014); *Durling v. Papa John's Int'l, Inc.*, No. 16 Civ. 3592, 2018 U.S. Dist. LEXIS 11584 at *26 (S.D.N.Y. Jan. 24, 2018). Defendants' also failed to respond to this request.

### Request for Sanctions

As outlined above, it appears that Defendants: (1) have not fully searched for relevant information; and (2) have likely destroyed or withheld relevant evidence. Plaintiff therefore requests a pre-motion conference in order to move to compel the production of those documents and to seek sanctions, which will include attorneys' fees, costs and an adverse influence.

The imposition of sanctions should "only be used … when a court finds willfulness, bad faith or any fault on the part of [the litigant]" *Valentine v. Museum of Modern Art*, 29 F3d 47, 49 (2d Cir. 1994), a court should not "shrink away from imposing harsh sanctions where … they are clearly warranted." *Jones v. Niagara Frontier Transp. Auth.,* 836 F.2d 731, 735 (2d Cir. 1987). Sanctions may be appropriate here under Fed. R. Civ. P 26 and 37, and under the Court's inherent powers to order sanctions. Here, it appears that Defendants and their counsel have engaged in a bad faith campaign to conceal facts and prevent Plaintiff from gathering relevant evidence. They "failed to comply with their discovery obligations from the very outset of this action." *Metropolitan Opera Ass'n Inc. v. Local 100, Hotel Employees and Restaurant Employees Int'l Union*, 212 F.R.D. 178, 226 (S.D.N.Y. Jan. 28, 2003). Defendants' disregard for their discovery obligations has caused Plaintiff to incur excessive attorneys' fees and costs that should have been avoided. Accordingly, Plaintiff respectfully requests that, to the extent not otherwise authorized, the Court exercise its inherent power to sanction Defendants for their discovery abuses.

Here, Defendants have failed to produce materials and potentially destroyed evidence. As a result, Plaintiff has been stymied in his ability to prosecute his case and has been forced to incur significant additional expenses. *See Metro. Opera Ass'n,* 212 F.R.D. at 221. Plaintiff should recoup these expenses.

## **Conclusion**

For all of the foregoing reasons, Plaintiff respectfully requests a pre-motion conference in order to seek sanctions.

Very truly yours,

**/s/ Randi M. Cohen**