

Randi M. Cohen
PARTNER

c  (631) 806-3762
f  (646) 513-2936
e  randi@kalmansoncohen.com

May 8, 2026

**VIA ECF**
Hon. Victoria Reznik, USMJ
United States District Court for
the Southern District of New York
300 Quarropas St.
White Plains, NY 10601-4150

Re: *Galvan v. Rolling Lawns, Inc. et al.*, Case No. 7:23-cv-06724(CS)(VR)

Dear Judge Reznik:

We are counsel to Plaintiff, Nepamuceno Galvan, in the captioned matter.  We respectfully submit this supplemental statement and the accompanying Declaration of Randi M. Cohen, together with exhibits attached thereto, in further support of the pending *Cheeks* motion (ECF No. 127) and in connection with Your Honor's Order dated April 1, 2026.

## I.    Procedural Background

Plaintiff was referred to the undersigned counsel by predecessor counsel, with whom Plaintiff had already executed an engagement agreement.  When the undersigned accepted Plaintiff as a client, the parties agreed to honor the terms of the engagement agreement to which Plaintiff had already signed.  Initially, Plaintiff sent a notice of claims letter to Defendants in hopes of resolving the matter without litigation.  That effort failed and Plaintiff commenced this case on August 1, 2023, alleging claims of age and disability discrimination, as well as claims for failure to pay overtime.  ECF No. 1.  The matter then proceeded to Court-Ordered mediation.  Mediation was unsuccessful.

Defendants filed a partial motion to dismiss on December 20, 2023 which was resolved by stipulation between the parties.  Defendants then answered the complaint on February 16, 2024. ECF No. 24.

The parties commenced discovery in the spring of 2024.  Initial document productions were due in July of 2024. Multiple disputes plagued discovery.  As of December 2024, the parties were still engaged in discovery disputes, largely related to the collection of ESI from Defendants.  Around this same time, the parties again attempted to resolve the case through the use of a mediator, but those efforts failed.

It was only then, in January of 2025 (17 months after the complaint was filed, and well after the parties had spent significant time and resources litigating the case) that Defendants filed a pre-motion conference letter seeking to dismiss the claims of age and disability discrimination for lack of subject matter jurisdiction. ECF No. 83.  Defendants filed the subject motion on February 21, 2025 (ECF No. 93), and the motion was fully briefed on April 1, 2025 (ECF No.98).  Discovery was not stayed during the pendency

of the motion, and accordingly the parties prepared for and held depositions—incurring significant attorney time and expenses.

In fact, on April 9, 2025, the Court ordered the parties to provide a status letter regarding discovery completed and remaining by May 16, 2025. ECF No. 99. On May 12, 2025, the Court notified the parties that they were to appear, in person, before the Court on June 25, 2025 for a bench ruling on the motion to dismiss. ECF No. 100. The parties filed discovery status letters on May 16, 2025 (ECF Nos. 101 and 102), and the Court then Ordered the parties to continue with the deposition schedule set forth in Plaintiff's letter, with one exception, (ECF No. 102), which called for no fewer than four depositions between that date and the June 25, 2025 Court conference, including all party depositions. ECF No. 103. The parties proceeded in accordance with the Court Order, and in fact, Defendants moved to continue the Plaintiffs' deposition for a second day during that period of time, which motion was granted in part. ECF Nos. 107 and 108. Plaintiff's deposition, alone, took two full days.

On June 25, 2025, the Court dismissed Plaintiff's discrimination claims on procedural grounds, leaving only the FLSA claims in the federal case. Still, discovery disputes plagued the case. Defendants asserted that Plaintiff deleted relevant text messages after the lawsuit was commenced, and Plaintiff asserted that Defendants deleted and/or willfully failed to produce responsive text messages after the lawsuit was commenced. Both parties anticipated filing a motion for sanctions with respect to text messages that may have been deleted.

In addition, Plaintiff had served several third-party subpoenas on witnesses that Plaintiff believed to possess information in support of his claims, most of whom were refusing to appear for their depositions, including, but not limited to, a witness Plaintiff believed to be a key witness employed by Defendant Rolling Lawns who was not represented by Defendants' counsel. At the same time, Plaintiff was preparing to file a state court discrimination case, and to that end, on August 6, 2025, sent Defendants' counsel a copy of a prepared (but yet unfiled) Summons with Notice alleging the same and hoping to resolve the case before embarking on an entirely new litigation.

The parties, recognizing the continued challenges with the case, the mounting costs, and having a desire to put the strain and time of litigation behind them, resumed settlement talks, which culminated in two settlement agreements—one for the claims under the New York State Human Rights Law, and the one before Your Honor relating to the FLSA claims.

## II.    Estimate of Plaintiff's Recovery

In his claim for unpaid overtime compensation, Defendants were challenging both Plaintiff's eligibility for overtime, and the number of hours that he worked. Plaintiff's eligibility for overtime is heavily disputed in this case, with the discovery demonstrating the need for a factfinder determination on that issue.

A party liable for unpaid overtime pursuant under the Fair Labor Standards Act and New York Labor Law is entitled to the two times the unearned wages, attorneys' fees, costs, and interest. 29 U.S.C. §207; N.Y.L.L. §650. Throughout the litigation, the parties performed various damages analyses relating to Plaintiff's overtime claims. At the outset of the litigation, Plaintiff believed that his damages for his FLSA claim could reach, approximately $715,000, inclusive of liquidated damages. However, discovery

2

demonstrated that Plaintiff's overtime eligibility (and when, if ever, it began) presented genuine questions for a fact-finder. With regard to damages, Defendants produced Plaintiff's time records, based upon the time clock used at Rolling Lawns. Although Plaintiff disputed the accuracy of the time clock records, had Plaintiff been overtime eligible, based on the time clock records alone, Plaintiff's FLSA damages would have arguably been limited to approximately $30,000 (before liquidated damages and interest).

Of course, Plaintiff testified that he worked hours far in excess of the hours shown on the time clock, however, there was no video or other physical evidence of the same, and nearly all of the witnesses that Plaintiff had called to testify as to this matter all failed and refused to appear for their depositions. This of course posed significant proof challenges for Plaintiff unless Plaintiff embarked on a path of moving to compel the depositions, at more time and cost.[1]

If Plaintiff was unable to demonstrate that he was, in fact, overtime eligible, he would receive no recovery on his overtime claims, and virtually no recovery in the case, given the dismissal of the discrimination claims, all with mounting direct expenses. And even if he were able to demonstrate his eligibility for overtime, without witness testimony about the hours that he, in fact worked, there were significant challenges in demonstrating entitlement to overtime in excess of the approximate $30,000.

Therefore, with the dismissal of the discrimination claims, the need to re-commence an entirely *new* litigation, the challenges with obtaining evidence, the pending time-consuming and costly potential motions (threatened in *both* actions), and the already mounting expenses of the litigation, the parties decided to resolve the case on terms mutually-agreeable terms. Counsel engaged in multiple settlement conversations over several weeks and the agreements were the result of many calls and arguments presented back and forth. Plaintiff ultimately preferred to resolve the case on the terms agreed-upon than continue the case to avoid the continued time, expense, uncertainty and emotional strain of litigation. Therefore, even though the settlement amount is less than Plaintiff's maximum recovery, his "obstacles to collection . . .justify" the settlement. *See Gervacio v. ARJ Laundry Servs.*, 2019 U.S. Dist. LEXIS 12760, at *3 (S.D.N.Y. Jan. 25, 2019) (citations and internal edits and quotation mark removed).

### III.    Contemporaneous Time Records

A copy of Counsel's time records is attached as Exhibit A to the Declaration of Randi Cohen, provided herewith.

### IV.    Contingency Fee explanation

Plaintiff's counsel inherited this case from predecessor counsel, who had agreed upon a 38% contingency with Plaintiff.[2]  The undersigned honored the previous terms to which Plaintiff had already

---

[1] Plaintiff speculates that because several of these witnesses are understood to be undocumented immigrants, given the current climate facing the undocumented population, the witnesses may have been fearful of participating in a Court proceeding.

[2] Plaintiff erroneously sought the lower 37.5% of recovery as fees in its *Cheeks* motion, and is not seeking to increase that at this juncture.

agreed. At the time, the case consisted of both FLSA and discrimination claims. Plaintiff and counsel understood these fees to be reasonable. Too, despite having no contractual obligation to do so, counsel advanced expenses on Plaintiff's behalf given the higher contingency fee arrangement, as well.

Attorneys' fees in FLSA cases are not limited to 33.3% of the recovery, and need not be proportional to the settlement amount. *Fisher v. SD Prot.*, 948 F.3d 593 (2d Cir. 2020) (finding error where the Court decreased attorneys' fee award to 33% of the recovery). *See also Pacheco v. Tjar Grp Corp.,* 2026 US Dist. Lexis 42574 (E.D.N.Y. Feb. 27 2026) (citations omitted) (stating that fees are not limited to 33% under the FLSA and awarding fees of 33% and costs, and finding that a lodestar multiplier of 1.4 was reasonable under the circumstances). In considering the lodestar methodology, courts will consider time spent on both successful and unsuccessful claims if they arise out of a common core of facts. *Hollick v. Cellular Sales Force of N.*, 48 F.4th 101 (2d Cir. 2022). Additionally, counsel in FLSA cases may be awarded reasonable, substantiated out-of-pocket expenses. *Coronel v. Hudson Anchor Seaford Rest.*, 2022 US Distr. Lexis 195232 (Oct.26, 2022); *Cortes v. New Creators, Inc.*, No. 15cv-5680 (PAE), 2016 US Dist. Lexis 79757 (S.D.N.Y. June 20, 2016).

In the interest of resolving the matter without further motion practice, Counsel would not object to decreasing its fee to $6,333—the equivalent of 33.3% of the recovery. However, Counsel does seek reimbursement of its out-of-pocket expenses in the amount of $7,035.00.[3] Given the amount of time that Counsel spent on this matter (over 500 hours total, and over 250 hours on just the FLSA portion of the case, assuming 50% of the case was related to the FLSA claims), Counsel's fee amounts to a rate of $24.74 per hour for counsel time (a small fraction of Counsel's standard billing rates). The volume of work was the result of the parties having nearly completed discovery before a determination on the motion to dismiss was had. It required the staffing of multiple attorneys over the course of the ***more than twenty-two months*** from the inception of the case through the decision on the motion to dismiss. Discovery was related to both the discrimination and wage and hour claims, and the claims were handled simultaneously in document discovery and depositions. Those claims arise out of a common nucleus of fact (to wit, Plaintiff alleges that his demotion to laborer, which rendered him overtime eligible, was the result of age discrimination). Moreover, the motion to dismiss was granted on *procedural* grounds only; there was no finding that the claim failed on the merits.

However, even if the Court were to find, *arguendo*, that Counsel's rates are too high or that Counsel spent too much time litigating the matter, even assuming only ***10%*** of Counsel's hours were reasonably attributable to the FLSA claim, Counsel's rate would still only be a blended rate of $122.73 per hour—well below any reasonable rate for counsel with over fifteen years' experience (and even that of the more junior lawyers staffed from time to time on the matter)—a more than reasonable fee. This accounts for *no* lodestar multiplier, and is eminently reasonable. *See Gervacio v. ARJ Laundry Servs.*, 2019 U.S. Dist. LEXIS 12760, at *7 ("The true lodestar amount is therefore greater than the fee award contained in the settlement agreement. As a result, the Court does not disturb the calculation of attorneys' fees . . . ."). Plaintiffs' out

---

[3] Additional out of pocket expenses in the amount of approximately $7,000 were allocated to the settlement agreement that the parties simultaneously entered into relating to the NYSHRL claims. Proof of all expenses is attached hereto.

of pocket expenses are just that—monies spent on Plaintiff's behalf, for filing fees, court reporters, discovery vendors, all of which are substantiated on Exhibit B attached to the Declaration of Randi M. Cohen.

## V.    **Proof of Expenses**

Counsel paid the case expenses on behalf of Plaintiff, and Plaintiff agreed that any unreimbursed amounts that counsel paid on behalf of Plaintiff could be deducted from a settlement amount to reimburse counsel. Proof of each of those expenses is attached to the Declaration of Randi Cohen, provided herewith.

## VI.    **Stipulation of Dismissal**

A draft stipulation of dismissal is attached to the Declaration of Randi Cohen as Exhibit C.

## VII.    **Conclusion**

For all of the foregoing reasons, we respectfully request that the Court approve of the Settlement Agreement.

Respectfully yours,

**/s/ Randi M. Cohen**

cc: Steven Moser, Esq., counsel for Defendants (via ECF)