**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

NEPAMUCENO GALVAN,

                Plaintiff,

        - against -

ROLLING LAWNS, INC., DAVID FERRARO
and EVAN FERRARO,

                Defendants.

Case No. 7:23-cv-06724(CS)

**DECLARATION OF RANDI M. COHEN**

---

RANDI M. COHEN, an attorney duly admitted to practice law in this District, declares, pursuant to 28 U.S.C. § 1746, as follows:

1. I am a partner at Kalmanson Cohen, PLLC ("KC"), and counsel for Plaintiff in this action. I make this declaration based upon my personal knowledge and the file maintained by my office.

<u>Procedural History</u>

2. Plaintiff was referred to KC by predecessor counsel, with whom Plaintiff had already executed an engagement agreement.

3. When the undersigned accepted Plaintiff as a client, the parties agreed to honor the terms of the engagement agreement to which Plaintiff had already signed.

4. Initially, Plaintiff sent a notice of claims letter to Defendants in hopes of resolving the matter without litigation. That effort failed.

5. Plaintiff commenced this case on or around August 1, 2023, alleging claims of age and disability discrimination, as well as claims for failure to pay overtime. ECF No. 1.

6. The matter was directed to Court-Ordered mediation. Mediation was unsuccessful.

7.   Defendants filed a partial motion to dismiss on December 20, 2023 which was resolved by stipulation between the parties.

8.   Defendants answered the complaint on February 16, 2024.

9.   The parties commenced discovery in the spring of 2024. Initial document productions were due in July of 2024.

10.  Multiple disputes plagued discovery.  As of December 2024, the parties were still engaged in discovery disputes, largely related to the collection of ESI from Defendants.

11. Around this same time, the parties again attempted to resolve the case through the use of a mediator, but those efforts failed.

12. In January of 2025 (17 months after the complaint was filed, and well after the parties had spent significant time and resources litigating the case), Defendants filed a pre-motion conference letter seeking to dismiss the claims of age and disability discrimination for lack of subject matter jurisdiction.  ECF No. 83.

13. Defendants filed the subject motion on February 21, 2025 (ECF No. 93), and the motion was fully briefed on April 1, 2025 (ECF No.98).

14. Discovery was not stayed during the pendency of the motion, and accordingly the parties prepared for and held depositions—incurring significant attorney time and expenses.

15. On April 9, 2025, the Court ordered the parties to provide a status letter regarding discovery completed and remaining by May 16, 2025.  ECF No. 99.

16. On May 12, 2025, the Court notified the parties that they were to appear, in person, before the Court on June 25, 2025 for a bench ruling on the motion to dismiss. ECF No. 100.

17.  The parties filed discovery status letters on May 16, 2025 (ECF Nos. 101 and 102), and the Court then Ordered the parties to continue with the deposition schedule set forth in Plaintiff's

letter, with one exception, (ECF No. 102), which called for no fewer than four depositions between that date and the June 25, 2025 Court conference, including all party depositions.  ECF No. 103.

18. The parties proceeded in accordance with the Court Order.

19. Defendants moved to continue  Plaintiff's deposition for a second day during that period of time, which motion was granted in part. ECF Nos. 107 and 108.  Plaintiff's deposition, alone, took two full days.

20. On June 25, 2025, the Court dismissed Plaintiff's discrimination claims on procedural grounds, leaving only the FLSA claims in the federal case.

21. Still, discovery disputes plagued the case.  Defendants asserted that Plaintiff deleted relevant text messages after the lawsuit was commenced, and Plaintiff asserted that Defendants deleted and/or willfully failed to produce responsive text messages after the lawsuit was commenced. Both parties represented that they anticipated filing motions for sanctions with respect to the alleged spoliation.

22. In addition, Plaintiff had served several third-party subpoenas on witnesses that Plaintiff believed to possess information in support of his claims, most of whom were refusing to appear for their depositions, including, but not limited to, a witness Plaintiff believed to be a key witness employed by Defendant Rolling Lawns who was not represented by Defendants' counsel.

23. At the same time, Plaintiff was preparing to file a state court discrimination case, and to that end, on August 6, 2025, sent Defendants' counsel a copy of a prepared (but yet unfiled) Summons with Notice alleging the same and hoping to resolve the case before embarking on an entirely new litigation.

24. The parties, recognizing the continued challenges with the case, the mounting costs, and having a desire to put the strain, time and uncertainty of litigation behind them, resumed settlement

talks, which culminated in two settlement agreements—one for the claims under the New York State Human Rights Law, and the one before Your Honor relating to the FLSA claims.

Contingency Fee Arrangement

25.     Plaintiff's counsel inherited this case from predecessor counsel, who had agreed upon a 38% contingency with Plaintiff.[1]  The undersigned honored the previous terms to which Plaintiff had already agreed. At the time, the case consisted of both FLSA and discrimination claims.  Plaintiff and counsel understood these fees to be reasonable.

26.     Counsel advanced expenses on Plaintiff's behalf given the higher contingency fee arrangement.

27.     Plaintiff had agreed with counsel that counsel would be reimbursed for any otherwise unreimbursed out-of-pocket expenses from the proceeds of any settlement agreement.

Reasonableness of Counsel Fees

28.     Plaintiff's counsel spent over 500 hours litigating this case.  A true and correct copy of counsel's time records are attached hereto as Exhibit A.

29.     Randi M. Cohen is a partner at Kalmanson Cohen, PLLC and has been practicing law since 2007. She started her career as an Assistant District Attorney for King's County and then became an associate at Meyer, Suozzi, English & Klein. From there she ascended to become known as a go-to employment litigator, ultimately starting her own practice in 2016, and merging with Kimberly Kalmanson in 2023. Throughout her career, she published several articles, taught several workshops, and appeared in the media on matters related to employment law. She typically bills at $650 per hour but also extends discounted hourly rates to certain clients.

---

[1] Plaintiff erroneously sought the lower 37.5% of recovery as fees in its *Cheeks* motion, and is not seeking to increase that at this juncture.

30.     Kimberly Kalmanson is a partner at Kalmanson Cohen, PLLC. She graduated law school in 2008, and started her career at Sonnenschein, Nath, and Rosenthal n/k/a Dentons US, LLP in the litigation department. After her time at Sonnenschein, Ms. Kalmanson became an associate at Labaton Sucharow, LLP, until 2013, when she started her own practice. She merged her practice with Randi Cohen in 2023. Ms. Kalmanson typically bills at $650 per hour but also extends discounted hourly rates to certain clients.

31.     Joni Kletter was senior counsel to Kalmanson Cohen, PLLC and has been practicing law since 2006. She initially worked at a mid-sized law firm, and later, worked in the NYC Office of the Mayor from 2015 through March of 2020. In March 2020, she became the Commissioner and Chief Administrative Law Judge for the NYC Office of Administrative Trials and Hearings. From May 2023 through October 2025, she was a senior counsel at Kalmanson Cohen. Ms. Kletter's billing rate was typically $550 per hour.[2]

32.     Though counsel had agreed upon a high contingency fee arrangement, in the interest of resolving the matter without further motion practice, Counsel would not object to decreasing its fee to $6,333—the equivalent of 33.3% of the recovery. Counsel does seek reimbursement of its out-of-pocket expenses in the amount of $7,035.00.[3]

33.     Given the amount of time that Counsel spent on this matter and allocating approximately 50% of that time to the FLSA claims, Counsel's fee amounts to a rate of $24.74 per hour for counsel time (a small fraction of Counsel's standard billing rates).

---

[2] Junior counsel was engaged on the matter from time to time, as well, with rates ranging normally in the range of $350-$475 per hour.

[3] Additional out of pocket expenses in the amount of approximately $7,000 were allocated to the settlement agreement that the parties simultaneously entered into relating to the NYSHRL claims. Proof of all expenses is attached hereto.

34.     The volume of work was the result of the parties having nearly completed discovery before a determination on the motion to dismiss was had. It required the staffing of multiple attorneys over the course of the *more than twenty-two months* from the inception of the case through the decision on the motion to dismiss. Discovery was related to both the discrimination and wage and hour claims, and the claims were handled simultaneously in document discovery and depositions. Those claims arise out of a common nucleus of fact (to wit, Plaintiff alleges that his demotion to laborer, which rendered him overtime eligible, was the result of age discrimination). Moreover, the motion to dismiss was granted on *procedural* grounds only; there was no finding that the claim failed on the merits.

35.     Even assuming, *arguendo*, that only *10%* of Counsel's hours were reasonably attributable to the FLSA claim, Counsel's rate would still only be a blended rate of $122.73 per hour—well below any reasonable rate for the counsel on the matter

### Expenses

36.     Counsel advanced the case expenses on behalf of Plaintiff.

37.     Plaintiff did not reimburse those expenses.

38.     Plaintiff agreed that any unreimbursed amounts that counsel paid on behalf of Plaintiff could be deducted from a settlement amount to reimburse counsel.

39.     A true and correct copy of receipts for these expenses is attached hereto as Exhibit B.[4]

---

[4] Exhibit B contains all expenses to be reimbursed in the now two separate settlement agreements, not just those being reimbursed pursuant to the FLSA settlement agreement.

40.     A draft stipulation of dismissal is attached to the Declaration of Randi Cohen as Exhibit C.

I declare (or certify, verify, or state) under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

May 8, 2026

＿＿＿/s/ Randi M. Cohen＿＿＿
Randi M. Cohen