Date:_____

## SETTLEMENT AGREEMENT AND GENERAL RELEASE OF CLAIMS

This Settlement Agreement and General Release of Claims (hereinafter, "Agreement") is made as of the Effective Date (defined below) between Nepamuceno Galvan, and said individual's heirs, executors, administrators, successors, assigns, and attorneys, (hereinafter collectively referred to as "Galvan" or "Plaintiff"), Defendant Rolling Lawns, Inc., and said company's successors, predecessors, parent, their related domestic and foreign business entities, corporations, partnerships, and subsidiaries, as well as their respective current and former directors, officers, shareholders, partners, employees, assigns, and successors in interest, representatives, agents, insurers, both in their representative and individual capacities, and Defendant David Ferraro and Defendant Evan Ferraro, and said individuals' heirs, executors, administrators, successors, assigns, and attorneys (hereinafter, collectively referred to as "Defendants").  Galvan and Defendants are referred to herein, from time to time, collectively as the "Parties" and individually as a "Party." The parties hereby agree as follows:

## RECITALS

**WHEREAS**, on August 1, 2023, Galvan caused to be filed a lawsuit captioned *Nepamuceno Galvan v. Rolling Lawns, Inc. et al.,* Civil Docket No. 7:23-cv-06724 in the United States District Court for the Southern District of New York (the "Lawsuit");

**WHEREAS**, in the Lawsuit, Galvan asserted claims for overtime violations of the Fair Labor Standards Act ("FLSA", Count 1), unpaid overtime under the N.Y. Labor Law and the supporting regulations ("NYLL", Count 2), recordkeeping violations under the FLSA (Count 3), discrimination in violation of the New York State Human Rights Law ("NYSHRL", Counts 4-8), an violations of the wage notice and wage statement provisions of the NYLL (Counts 9-10, respectively);

**WHEREAS,** on January 9, 2024, Plaintiff agreed to withdraw his Fair Labor Standards Act ("FLSA") Recordkeeping claim (Count 3) and his claim for Failure to Furnish Wage Statements pursuant to NYLL Section 195(3) (Count 10) with prejudice;

**WHEREAS,** on July 10, 2025 the Court dismissed Plaintiff's NYSHRL Claims (Counts 4-8) *without prejudice* for lack of subject matter jurisdiction, and granted Plaintiff leave to re-file said claims in New York State Court;

**WHEREAS,** Plaintiff's surviving claims in the Lawsuit include unpaid overtime under the FLSA (Count 1), unpaid overtime under the NYLL (Count 2), and statutory damages for wage statement violations under the NYLL (Count 9)(the "surviving claims");

**WHEREAS,** on or about July 10, 2025, Galvan furnished to the Defendants a proposed Summons with Notice, a copy of which is annexed hereto as Exhibit A, re-alleging and re-asserting Plaintiff's NYSHRL Claims (Counts 4-8 of the federal Lawsuit) which Plaintiff intends to file in the Supreme Court of the State of New York, Westchester County.

**WHEREAS,** Defendants have denied, and continue to deny, all of Galvan's allegations raised in the Lawsuit and in the Summons with Notice, as well asany other allegations of wrongdoing with respect to Galvan; and

**WHEREAS**, on or about September 9, 2025 the Parties parties agreed in principle to settle the Plaintiff's FLSA/NYLL Claims for the sum of $19,000.00 pursuant to a FLSA/NYLL SETTLEMENT AGREEMENT, a copy of which is annexed hereto as Exhibit B;

**WHEREAS,** on or about September 9, 2025, the Parties agreed in principle to settle all claims that the Plaintiff may have against the Defendant other than the surviving claims for the sum of $20,000.00; and

**WHEREAS**, the Parties have engaged in substantial arms-length settlement negotiations and now wish to amicably resolve, prior to filing the Summons With notice, any and all of Galvan's claims and disputes against Defendants which now exist or may exist in the future arising out of his prior employment;

**NOW, THEREFORE**, in consideration of the covenants, conditions, and promises set forth below, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

**AGREEMENT**

1.     **Incorporation of Recitals.** The foregoing Recitals are hereby incorporated into the Agreement itself by reference.

2.     **Settlement Funds**. In consideration of the promises made by Galvan in this Agreement, Defendants agree to pay Galvan, and Galvan agrees to accept, a total sum payment of Twenty Thousand Dollars and No Cents ($20,000.00) (the "Settlement Funds").

    (a)    The Settlement Funds will be allocated as follows:

        i.    One check made payable to "Nepamuceno Galvan" in the amount of $5,929.81. Galvan shall provide a duly executed Form W-9 to counsel for the Company with a signed copy of this Agreement. No taxes and/or withholdings will be withheld from the payment in accordance with governing law. An Internal Revenue Service Form 1099 shall be issued to Galvan in connection with this payment.

        ii.    One check made payable to the "Kalmanson Cohen, PLLC" in the total amount of $14,070.19, for attorneys' fees, costs, and expenses, for which Defendants will issue an IRS Form 1099 to Kalmanson Cohen, PLLC.

    (b)    Defendants shall provide the payments described above within ten (10) days of the Effective Date of this Agreement, as defined herein. The Settlement Funds will be delivered to Galvan's counsel at Kalmanson Cohen, PLLC, 165 Broadway, 23rd Floor, NY, NY 10006.

(c)      Annexed hereto as Exhibit B is a FLSA/NYLL SETTLEMENT AGREEMENT.  The amounts to be paid under the FLSA/NYLL SETTLMENT AGREEMENT are *in addition* to the amounts specified in 2(a)(i)-(ii) herein, such that the total combined gross amount to be paid under this Agreement and the FLSA/NYLL SETTLEMENT AGREEMENT will be $39,000.00.

(d)      Notwithstanding the foregoing, if the Court determines that the amount allocated to claims arising under the FLSA and/or the NYLL under  the annexed FLSA SETTLEMENT AGREEMENT is not fair and reasonable, or otherwise declines to approve the FLSA SETTLEMENT AGREEMENT, the parties agree to cooperate in good faith to re-allocate the settlement funds between this Agreement and the FLSA/NYLL SETTLEMENT AGREEMENT, and make other modifications to the FLSA/NYLL SETTLEMENT AGREEMENT as necessary in order to consummate the FLSA/NYLL SETTLEMENT AGREEMENT and all other remaining claims.. Plaintiff's counsel shall be responsible for filing the motion for approval of the FLSA/NYLL SETTLEMENT and renewed motion.

(e)      Galvan acknowledges and agrees that he and his counsel have sole responsibility for the payment of any taxes, interest, or penalties arising from the Settlement Funds. Defendants makes no characterization of or representation as to the taxability of the Settlement Funds. Galvan further agrees to indemnify and hold harmless Defendants in the event the IRS or any other taxing authority assesses any taxes, excise taxes, penalties, or interest against Defendants regarding the Settlement Funds, including reasonable attorneys' fees and expenses incurred by Defendants in connection therewith.

3.      **Reason for Receipt of Settlement Funds.** Galvan understands and agrees that he would not receive the Settlement Funds except for his execution of this Agreement, and the fulfillment of his promises contained therein, each of which constitutes a material inducement to Defendants to enter into this Agreement. Galvan further agrees that the payment of the Settlement Funds is consideration to which he would not otherwise be entitled.

4.      **No Admission of Wrongdoing.** Galvan acknowledges and agrees that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time, for any purpose, as an admission by Defendants or the Released Parties (as defined below) of any improper or unlawful conduct of any kind. Further, the Parties agree that neither Party shall be deemed to be the prevailing party on any of the claims asserted in or related to the Lawsuit.

5.      **Dismissal of the Lawsuit.** As consideration for signing this Agreement and promises herein, Galvan agrees as follows:

(a)      Galvan will dismiss his lawsuit against Defendants with prejudice;

(b)      Neither the payment of the Settlement Funds nor dismissal of the Lawsuit shall constitute or be represented as any admission, finding, conclusion, or judgment of a violation of any law or statute by Defendants. It is expressly stipulated by Galvan that he is not to be considered a prevailing party in the Lawsuit for any purposes;

3

(c)    The Parties agree that each provision in this Paragraph, without limitation, is a material provision of this Agreement.

6.    **Release and Waiver of Rights and Claims by Galvan.**

(a)    Notwithstanding any local or other law to the contrary, Galvan expressly releases and discharges Defendants from and against any and all claims, obligations, debts, liabilities, demands, or causes of action of any kind whatsoever (all collectively referred to herein as the "disputes") with respect to any alleged acts occurring before the execution of this Agreement.

(b)    The disputes released by Galvan, individually and/or collectively, herein include those known or unknown, actual or contingent, in law, in equity, or otherwise, and whether based in tort, contract, statute, or any other basis.  This release includes all disputes by which Galvan could seek equitable relief, actual compensatory, consequential, punitive, special, multiple, or other damages, expenses (including attorneys' fees and costs), and all other reimbursements or charges of any kind.

(c)    The disputes released by Galvan include any and all disputes he has or may believe he has arising under any federal, state, local, or foreign statute or regulation, individually or jointly, including, without limitation, those relating to the New York Labor Law §§ 190-199, 650-659, unfair or discriminatory employment practices (for example, employment discrimination based on race, national origin, sex, sexual harassment, religion, age, disability, or handicap) of any kind under the Federal Civil Rights Acts of 1866, 1871, 1964, and 1991 (including Title VII), the Age Discrimination in Employment Act of 1967, the Federal Americans With Disabilities Act, the Federal Employee Retirement Income Security Act of 1974, the Internal Revenue Code of 1986, the Fair Labor Standards Act, the New York State Human Rights Law, the New York City Human Rights Law, New York Executive Law § 290 et seq., the New York Civil Rights Law, New York Civil Rights Law § 1 et seq., the New York Equal Pay Law, the New York Whistleblower Law, New York Labor Law § 740 et seq., the New York Legal Activities Law, New York Labor Law § 201-d, the New York wage-hour and wage-payment laws, the New York occupational safety and health laws, federal statutes regarding "whistleblower" activities, New York Workers' Compensation Law § 120, the Federal Family and Medical Leave Act of 1993, the Occupational Safety and Health Act of 1970, the Fair Credit Reporting Act, the Federal Rehabilitation Act of 1973, the Consolidated Omnibus Budget Reconciliation Act of 1985 (known as "COBRA"), any other federal and state employment-related statutes and regulations, and any other employment-related local ordinance.

(d)    The disputes released by Galvan also include any and all disputes he has or may believe he has against Defendants in contract or at common law, including, but not limited to, breach of oral, written, and/or implied contract, breach of an implied covenant of good faith and fair dealing, wrongful discharge under any theory, including for lack of good cause, in violation of public policy and constructive discharge, intentional, and negligent infliction of emotional distress, negligent retention and supervision, assault, battery, negligence, misrepresentation or fraud of any kind, duress, unfair dealing, breach of fiduciary or other duty, invasion of privacy, defamation, and interference with contract and/or prospective economic advantage.  Galvan also hereby releases Defendants for any claim of medical, psychiatric or

4

psychological damage that Galvan believes he may have been subjected to or believes he may have against Defendants.

(e)     The reference herein to specific statutory, contract, and common law claims is in no way intended to limit the disputes released by Galvan.  The Parties intend that the disputes released by Galvan herein be construed as broadly as possible to cover any and all disputes that Galvan has or believes he has against the Defendants, individually or jointly.  In that regard, Galvan further acknowledges that he may later discover facts in addition to, or different from, those which he now knows or believes to be true with respect to the subject matter of this Agreement.  The Parties mutually agree that any such difference in the facts shall not affect this Agreement, and that they further agree that this Agreement shall remain in full force and effect and not be subject to rescission by reason of any such difference in the facts.  Galvan's intention is to fully, finally, and forever resolve and release any and all disputes he may have or believes to have against Defendants,  individually or jointly, with respect to any alleged acts occurring before the Effective Date of this Agreement, whether those disputes presently are known or unknown, suspected,  or unsuspected.  Notwithstanding the provisions contained herein, the Parties specifically reserve their rights to sue for enforcement of this Agreement.

(f)     To the extent Galvan believes that any additional monies are owed beyond any payment made to his under this Agreement, his entitlement to such is denied, disputed and waived.

(g)     Galvan acknowledges that nothing in this release is intended to limit or limits his potential right or ability to file a charge or claim of discrimination or complaint with, or participate in any investigation or proceeding conducted by, the U.S. Equal Employment Opportunity Commission, U.S. Department of Labor, or other federal government agency or comparable state or local agencies for which such right cannot be waived, all of which have the authority to carry out their statutory duties by investigating the charge/claim, issuing a determination, filing a lawsuit in federal or state court in their own name, or taking any other action authorized under various laws. Galvan will not accept recovery from any such action, but will assign such recovery to Defendants.  The parties agree that notwithstanding anything herein to the contrary, Galvan is not waiving any claims to enforce this Agreement..

(h) The Parties agree that nothing in this Agreement shall be construed to limit, restrict, impede, waive, release or discharge Galvan's right to pursue claims that cannot be waived by law, such as claims for workers' compensation and unemployment benefits; and exercise, obtain, or receive vested benefits, such as pension or retirement benefits, the rights to which are governed by the terms of any applicable plan document and award agreements.

(i)     Galvan warrants that he has not assigned, sold, transferred, or conveyed to anyone any actions, causes of action, claims, or demands that Galvan has or ever had against the Released Parties and covenants that Galvan will not file or permit to be filed on his behalf any such claims and will not voluntarily participate as a party or member of any class seeking relief against the Released Parties, whether those claims are on his behalf or others, to the fullest extent permissible by law.

5

(j)       Galvan warrants that he has no pending administrative agency charges against any of the Released Parties or other grievances of any nature pending in any federal, state, municipal agency, court, or local authorities or other claims not addressed herein this Agreement, excluding any protected whistleblower activity.

(k)       Galvan warrants that he has no pending litigation against the Defendants other than the Lawsuit.

(l)       Galvan warrants that he is not aware of any other actions, proceedings, investigations, or complaints pending against the Defendants by any person or entity;

(m)       Covenant Not to Sue: Plaintiff agrees not to file a lawsuit or commence any other legal proceeding against Releasees concerning any matter released in this Agreement. If Plaintiffs breach the provision of this Paragraph, Releasees will be entitled to seek recovery of their costs, including their reasonable attorneys' fees, relating to Releasees' enforcement of this Agreement and/or defense of such claims.

(n)       The Parties agree that each provision in this Paragraph, without limitation, is a material provision of this Agreement.

(o)       This Release section does not waive claims arising after the execution of this Agreement and it does not waive any attempts to enforce this Agreement.

7.       **No Future Employment.** As additional consideration for the payment of the Settlement Funds, Galvan expressly agrees (i) he will not apply for or accept employment or placement with Defendants or any of their parents, subsidiaries, divisions, related companies, successors, related entities, or affiliates thereof at any time in the future; (ii) he waives any and all rights he may have under any contract, law, or other source of rights to employment and placement with Defendants or other of the above described related entities; (iii) he is not eligible for employment or placement with Defendants; and (iv) it is his intention to withdraw forever from the prospective pool of applicants seeking employment or placement with Defendants or other entities set forth in this Paragraph. Galvan further agrees and acknowledges that he is not waiving claims or rights that he may have after the execution of the Agreement, but that he has contractually agreed not to apply for or accept employment, placement, or assignment as provided in this Agreement and that this Agreement shall constitute a complete bar to any claim he may have should he apply for employment, placement, or assignment with any such persons/entities in the future and not be hired, placed, or assigned or be hired, placed, or assigned and subsequently discharged or removed.

8.   **Mutual Non-Disparagement.** Galvan will not make any verbal, electronic or written comments that are defamatory or disparaging (i.e., recklessly or maliciously untrue, or which are made with knowledge of their falsity, or with reckless disregard for their truth or falsity) concerning his past employment with Defendants to any person or entity who is not a Party to this Agreement. Nothing in this Agreement or this Paragraph is intended nor shall it be interpreted to limit or prevent Galvan from engaging in protected concerted activity or exercising his right to file or participate in the investigation of a charge brought under the National Labor Relations Act. Company agrees and covenants that Senior Executives, including David and Evan Ferraro, will

6

not make any verbal, electronic or written comments that are defamatory or disparaging (i.e., recklessly or maliciously untrue, or which are made with knowledge of their falsity, or with reckless disregard for their truth or falsity) concerning Plaintiff's employment with Defendants. It is expressly agreed and understood by the Parties that this mutual non-disparagement provision is a material term of this Agreement. Notwithstanding the foregoing, nothing in this Section shall prohibit any person from making truthful statements when required by law, order of a court or other body having jurisdiction.

9.    **Complete Understanding; Modification.** The Parties agree that this is the entire agreement between the Parties. This Agreement overrides and replaces all prior negotiations and terms proposed or discussed, whether in writing or orally, about the subject matter of this Agreement. Such agreements shall also be enforced only to the extent as allowed by applicable federal, state or local law. No modification of this Agreement will be valid unless it is in writing identified as an Amendment to the Agreement and is signed by Galvan and Defendants.

10.    **Choice of Law/Severability.** This Agreement will be interpreted under and governed by the laws of the State of New York without regard to principles of conflicts of law. Each Party hereby irrevocably agrees that any suit, action, proceeding, or claim against it arising out of or in any way relating to this Agreement, or any judgment entered by any court in respect thereof, may be brought or enforced in the state or federal courts of New York. Each provision of this Agreement is intended to be severable. If any court or other entity with competent jurisdiction determines that any provision of this Agreement is invalid, illegal, or unenforceable in any respect, such provision shall be void and the rest of the Agreement will remain in full force and effect. In addition, nothing in this Agreement is intended to nor shall it be interpreted to explicitly or implicitly limit rights to engage in protected concerted activity under the National Labor Relations Act (NLRB). Accordingly, the severability under this Paragraph specifically includes any portion of this Agreement that violates the NLRB.

11.    **Counterparts.** This Agreement may be executed electronically and in identical counterpart copies, each of which shall be an original, but all of which taken together shall constitute one and the same instrument. A facsimile, emailed, or scanned copy of any Parties' signatures will be deemed as legally binding as the original signatures. In proving this Agreement, it shall not be necessary to produce or account for more than one such counterpart executed by the Party against whom enforcement is sought.

12.    **Medicare and Medicaid Acknowledgement.** Galvan represents that he is not enrolled in any Medicare or Medicaid program, and was not enrolled in a Medicare or Medicaid program during his employment with Defendants. Galvan represents that he has not received Medicare or Medicaid benefits for medical services or items related to, arising from, or in connection with his employment with Defendants. Galvan further represents and warrants that he has not received any medical services or items related to, arising from, or in connection with the matters released in this Agreement. It is understood and agreed that Galvan expressly relied upon the promises, representations, and warranties made by Defendants in this Agreement; that any breach of such promises, representations, and warranties would constitute a material breach of this Agreement.

13. **Construction.** Defendants and Galvan each agree that this Agreement was a negotiated agreement reached when both Parties were represented by counsel and that each has had a fair opportunity to participate in the negotiation and drafting of the Agreement's terms and conditions. Defendants and Galvan each further agree that the rule of construction requiring that ambiguities are to be resolved against the drafting Party does not apply to the interpretation of this Agreement, and that no inference in favor of, or against, any Party shall be drawn from the fact that one Party has drafted any portion of this Agreement.

14. **Review Period; Effective Date.** Without limiting the scope of this Agreement, Galvan acknowledges all of the following:

(a) Galvan acknowledges that he has been advised in writing of his right to consult with his attorney and have his counsel review this Agreement prior to signing this Agreement, and that he has had the opportunity to do so.

(b) This Agreement will not become effective until (1) counsel for Defendants has received a fully executed copy of this Agreement, (2) counsel for Defendants has received a fully executed copy of the FLSA/NYLL SETTLEMENT AGREEMENT, a copy of which is annexed hereto, (3) counsel for Galvan has submitted a joint motion for approval of the FLSA/NYLL SETTLEMENT AGREEMENT to the Court, (4) the FLSA/NYLL SETTLEMENT AGREEMENT has been approved by the Court, (5) the Lawsuit is dismissed with prejudice and (6) counsel for Defendants receives the tax forms referenced in this Agreement. ("Effective Date").

**Acknowledgement.** By signing this Agreement, Galvan acknowledges and agrees that he: (a) has carefully read this Agreement in its entirety; (b) has had a reasonable opportunity to consider its terms; (c) has been advised that this Agreement has important legal consequences and that he may choose to consult with an attorney in connection with this Agreement and that she, in fact, consulted with his attorney in the Lawsuit about the implications of signing this Agreement and the release contained herein; (d) fully understands the significance of all of the terms and conditions of this Agreement; and (e) is signing this Agreement voluntarily and of his own free will, without coercion or duress, and agrees to abide by all the terms and conditions contained in the Agreement.

**IN WITNESS THEREOF**, and intending to be legally bound hereby, each of the Parties hereto has read the foregoing Agreement and accept and agree to the provisions contained herein and caused this Agreement to be executed on the day set forth below their signature.

NEPAMUCENO GALVAN                    ROLLING LAWNS, INC.

_____      By: _____
Signature                                ID FVn8a5oABhMjK9TNP4A6K1E3
                                         Signature

Date: 11/4/25                            David ferraro, President
                                         Name (Printed)

8

President
_____
Title

Date:____11/7/2025_____

ID EVn8a5oARbMjK9TNP4A6K1F3
_____
DAVID FERRARO, Individually

Date:____11/7/2025_____

ID wPUfcbqeTW4zUHfamPzBhaCx
_____
EVAN FERRARO

Date:____11/7/2025_____

9

# eSignature Details

**Signer ID:**       **wPUfcbqeTW4zUHfamPzBhaCx**
Signed by:           Evan Ferraro
Sent to email:       evanferraro@rollinglawns.com
IP Address:          68.198.155.182
Signed at:           Nov 7 2025, 2:01 pm EST


**Signer ID:**       **FVn8a5oABhMjK9TNP4A6K1E3**
Signed by:           David Ferraro
Sent to email:       davef@rollinglawns.com
IP Address:          68.198.155.182
Signed at:           Nov 7 2025, 2:06 pm EST